LIONEL Z. GLANCY (#134180)
MARC L. GODINO (#182689)
MARK S. GREENSTONE (#199606)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:     (310) 201-9150
Facsimile:     (310) 201-9160
Email: lglancy@glancylaw.com
       mgodino@glancylaw.com
       mgreenstone@glancylaw.com
       info@glancylaw.com

*Attorneys for Plaintiffs*
[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EVERETT CASTILLO, LINDA CASTILLO, NICHOLAS DATTOMA, FREDA LANG, WENDY TRAN, and STEVEN WILK, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>          v.<br><br>SEAGATE TECHNOLOGY LLC,<br><br>                      Defendant. | Case No. 3:16-cv-01958-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     September 21, 2017<br>Time:     1:30 p.m.<br>Judge:    Hon. Richard Seeborg<br>Courtroom: 3 – 17th Floor |

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:16-cv-01958-RS

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 3

II.     BACKGROUND ...................................................................................................... 4

    A.      Plaintiff's Allegations ................................................................................. 4

    B.      Procedural Background ................................................................................ 4

    C.      Settlement Negotiations and Resolution ..................................................... 5

III.    TERMS OF THE SETTLEMENT ........................................................................ 5

    A.      Class Definition .......................................................................................... 5

    B.      Settlement Consideration ............................................................................ 6

        1.      Identity Theft Protection Services .................................................. 6

        2.      Reimbursement of Documented Economic Costs ........................... 6

        3.      Non-Monetary Relief ...................................................................... 7

    C.      Release ......................................................................................................... 7

    D.      Notice and Settlement Administration ........................................................ 7

    E.      Service Awards ........................................................................................... 7

    F.      Attorneys' Fees and Expenses .................................................................... 7

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED. .................... 8

    A.      The Settlement Satisfies the Requirement for Numerosity .......................... 8

    B.      The Settlement Satisfies the Requirement of Commonality ........................ 9

    C.      The Settlement Satisfies the Requirement of Typicality ............................ 10

    D.      The Settlement Satisfies the Requirement of Adequate Representation ......... 11

    E.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ...... 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.    Common Questions of Law and Fact Predominate ................................................. 13

2.    This Class Action Is the Superior Method of Adjudication.................................. 13

F.    Plaintiffs' Counsel Should be Appointed as Class Counsel ............................................. 14

V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL..................... 15

VI.    THE PROPOSED NOTICE PLAN ........................................................................................... 19

VII.    CONCLUSION.......................................................................................................................... 21

1

# **TABLE OF AUTHORITIES**

2

3

<u>CASES</u>

4

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................ 8, 13, 14

5

*Algee v. Nordstrom, Inc.*,
6      No. 11-301, 2012 U.S. Dist. LEXIS 62232 (N.D. Cal. May 3, 2012) ................................... 9

7

*Boring v. Bed Bath & Beyond of Cal. LLC*,
8      No. 1-cv-05259, 2013 U.S. Dist. LEXIS 165909 (N.D. Cal. Nov. 21, 2013) ...................... 16

9

*Chamberlan v. Ford Motor Co.*,
10     223 F.R.D. 524 (N.D. Cal. 2004) .................................................................................. 14, 15

11

*Ching v. Siemens Indus., Inc.*,
12     No. C 11-4838, 2013 U.S. Dist. LEXIS 169279 (N.D. Cal. Nov. 26, 2013) ................... 16, 18

13

*Cordy v. USS-Posco Indus.*,
14     No. 12-cv-00553-JST, 2014 WL 212587 (N.D. Cal. Jan. 17, 2014) .............................. 16, 19

15

*Eisen v. Carlisle & Jacquelin*,
      417 U.S. 156 (1974) ....................................................................................................... 19, 20

16

*Estrella v. Freedom Fin. Network, LLC*,
17     No. C 09-03156, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. June 2, 2010) .......................... 11

18

*Freeman v. ABC Legal Servs., Inc.*,
19     877 F. Supp. 2d 919 (N.D. Cal. 2012) ................................................................................ 19

20

*Hanlon v. Chrysler Corp.*,
21     150 F.3d 1011 (9th Cir. 1998) ................................................................................... *passim*

22

*Hanon v. Dataproducts Corp.*,
      976 F.2d 497 (9th Cir. 1992) ............................................................................................. 11

23

*Harris v. Vector Marketing Corp.*,
24     No. C 08-5198, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr .29, 2011) .......................... 16

25

*Holloway v. Full Spectrum Lending*,
26     No. 06-cv-5975, 2007 U.S. Dist. LEXIS 59934 (C.D. Cal. June 26, 2007) ........................ 14

27

*Hopkins v. Stryker Sales Corp.*,
28     No. 5-02786, 2012 U.S. Dist. LEXIS 67101 (N.D. Cal. May 14, 2012) ............................... 9

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ..................................................... 15

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................. 16, 18, 19

*Kagan v Wachovia Sec., L.L.C.*,
No. 09-5337, 2012 U.S. Dist. LEXIS 46372 (N.D. Cal. Apr. 2, 2012) ................................. 8

*Konstantinos Moshogiannis v. Sec. Consultants Group, Inc.*,
No. 5-05971, 2012 U.S. Dist. LEXIS 16287 (N.D. Cal. Feb. 8, 2012) ......................... 8, 16

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) ..................................................... 14

*Parra v. Bashas', Inc.*,
536 F.3d 975 (9th Cir. 2008) ..................................................... 9

*Pierce v. Cnty. of Orange*,
526 F.3d 1190 (9th Cir. 2008) ..................................................... 12

*Tabata v. Charleston Area Med. Ctr., Inc.*,
759 S.E.2d 459 (W. Va. 2014) ..................................................... 10

*Tijero v. Aaron Bros., Inc.*,
No. C 10-01089, 2013 U.S. Dist. LEXIS 178511 (N.D. Cal. Dec. 19, 2013) ..................... 18

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ..................................................... 13

*Vandervort v. Balboa Capital Corp.*,
287 F.R.D. 554 (C.D. Cal. 2012) ..................................................... 14

*Villegas v. J.P. Morgan Chase & Co.*,
No. 09-cv-00261, 2012 U.S. Dist. LEXIS 166704 (N.D. Cal. Nov. 21, 2012) ................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..................................................... *passim*

*Williams v. Costco Wholesale Corp.*,
No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4 ,2010) ..................... 16

*Wolin v. Jaguar Land Rover North Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ..................................................... 10, 13

1

STATUTES

2

28 U.S.C. § 1715 ............................................................................................................. 20

3

RULES

4

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

5

6

OTHER AUTHORITIES

7

Herbert Newberg & Alba Conte, Newberg on Class Actions
    (4th ed. 2002) ................................................................................................. 15, 20

8

Manual for Complex Litigation
    (2d ed. 1985) ......................................................................................................... 16

9

10

Manual for Complex Litigation
    (4th ed. 2004) ..................................................................................................... 8, 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that on September 21, 2017, at 1:30 p.m., or at such other time as may be set by the Court, Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of the class action settlement reached by Plaintiffs and Defendant Seagate Technology LLC, in Courtroom 3, 17th floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Richard Seeborg.

The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of David J. Stone, oral argument of counsel, all documents in the record, the Northern District of California's Procedural Guidance for Class Action Settlements, and any other matter that may be submitted at the hearing.

## STATEMENT OF ISSUES PRESENTED

The issues presented by this Motion are:

1.      Does the proposed Settlement class meet the requirements for certification under Rule 23(a) and (b)(3)?

2.      Should Plaintiffs be appointed as Settlement class representatives and their counsel as Settlement class counsel?

3.      Does the proposed notice plan satisfy the requirements of Rule 23 and due process?

Dated: July 27, 2017                           GLANCY PRONGAY & MURRAY LLP


By: *s/ Marc L. Godino*
Lionel Z. Glancy
Marc L. Godino
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email: mgodino@glancylaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRAGAR EAGEL & SQUIRE, P.C.
Jeffrey H. Squire
Lawrence P. Eagel
David J. Stone
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone: (212) 308-5858
Facsimile: (212) 486-0462
stone@bespc.com

FINKELSTEIN, BLANKINSHIP, FREI-
PEARSON & GARBER, LLP
Jeremiah Frei-Pearson (*Pro Hac Vice*)
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Telephone: (914) 908-6709
Jfrei-pearson@fbfglaw.com

KELLER GROVER LLP
Eric A. Grover
1965 Market Street
San Francisco, CA 91403
Telephone: (415) 543-1305
Facsimile: (415) 543-7861
eagrover@kellergrover.com

*Attorneys for Plaintiffs and the Class*

## I. INTRODUCTION

Plaintiffs Everett Castillo, Linda Castillo, Nicholas Dattoma, Freda Lang, Wendy Tran, and Steven Wilk ("Plaintiffs") seek preliminary approval of a class action settlement that will resolve claims against Defendant Seagate Technology Inc. ("Seagate") arising out of Plaintiffs' allegations with respect to a 2016 phishing incident on or around March 1, 2016 (the "Data Incident"). After the Court granted in part and denied in part Seagate's motion to dismiss and Plaintiffs filed an amended complaint, the parties resolved this dispute in a private mediation before the Honorable Judge Carl J. West (Retired), of JAMS in Los Angeles. Through this mediation and subsequent arms' length negotiations, the parties reached a settlement for which Plaintiffs now seek preliminary approval.

The settlement provides an extraordinary result for the Settlement Class members. Seagate will offer Employees and Third Parties up to two years of Experian's ProtectMyID identity theft protection plan[1] at no cost. In addition, Seagate will reimburse all class members for documented out-of-pocket costs as a result of the Data Incident that are not otherwise reimbursable through the ProtectMyID plan, *up to $3,500 per class member*. Plaintiffs estimate that the Experian ProtectMyID protection is valued at approximately $5.75 million to the Settlement Class.[2] Plaintiffs further estimate that Seagate's "backstop" protection offers potential coverage of *more than $42 million* to protect a class estimated at 12,000 individuals. Indeed, it is unlikely that Plaintiffs could have obtained more for the class had they prevailed at trial.

Plaintiffs therefore request that the Court grant preliminary approval to the settlement, approve the form and manner of notice to the class, and confirm the appointment of class counsel.

---

[1] The Experian ProtectMyID plan includes: (i) daily bureau credit monitoring; (ii) identity theft resolution and ExtendCARE™, which provides fraud resolution support after expiration of the ProtectMyID membership; and (iii) $1 million in identity theft insurance, which covers certain costs, including lost wages and unauthorized electronic fund transfers.

[2] The most equivalent identity theft protection plan Experian offers to consumers is the IdentityWorks Premium plan, which costs $19.99 per month.

## II.    BACKGROUND

### A.    Plaintiff's Allegations

Plaintiffs allege that, on or about March 1, 2016, Seagate disclosed that it was the victim of a phishing attack resulting in the disclosure of 2015 Form W-2 data ("W-2 Data") concerning individuals who had worked for Seagate and certain corporate affiliates during the 2015 calendar year ("Employees"). (*See* First Amended Consolidated Complaint (Dkt. No. 48) ("FACC") ¶¶ 25.)

Plaintiffs allege that certain Employees were informed that unknown individuals had filed fraudulent federal and state tax returns in their names.  (*Id.* ¶ 26.)  Plaintiffs also allege that certain of those Employees learned that the fraudulent tax returns were filed jointly, on behalf of themselves and their spouses, and included their spouses' Social Security number.  (*Id.*)

In notifying Employees regarding the Data Incident, Seagate informed Employees that it would offer Employees, at no cost to the Employee, a two-year membership in Experian's ProtectMyID Alert identity theft protection program.  (*Id.* ¶ 56.)

Plaintiffs are former Seagate Employees (Freda Lang, Everett Castillo, Nicholas Dattoma, Wendy Tran, and Steven Wilk), and one spouse of a former Employee (Linda Castillo).  (*Id.* ¶¶ 14-19.) Seagate notified each of the current and former Employees that their PII was disclosed in the Data Incident.  (*Id.*)  Plaintiffs allege that they subsequently learned that fraudulent tax returns had been filed on their behalf.  (*Id.* ¶¶ 45, 50, 52-54.)  Plaintiff Everett Castillo alleges that the fraudulent tax return was filed jointly, on behalf of him and his wife, Plaintiff Linda Castillo, and that the fraudulent tax return included Ms. Castillo's Social Security number.  (*Id.* ¶ 50.)  Each of the Plaintiffs alleges they suffered harm as a result of the Data Incident.

Seagate has denied Plaintiffs' allegations and asserted defenses to Plaintiffs' claims based on Seagate's implementation of reasonable procedures to protect Settlement Class Members' PII and Seagate's compliance with any contractual obligations that Seagate may have.

### B.    Procedural Background

Plaintiffs Everett Castillo, Linda Castillo, and Wendy Tran commenced a class action in this Court on April 14, 2016, alleging multiple claims arising out of the Data Incident.  Plaintiff Nicholas

Dattoma commenced a class action in this Court on April 21, 2016, also alleging multiple claims arising out of the Data Incident.  The two actions were consolidated on June 15, 2016, and the Plaintiffs filed their Consolidated Class Action Complaint on June 28, 2016, which added Freda Lang and Steven Wilk as plaintiffs.  Seagate moved to dismiss the Consolidated Complaint in its entirety on July 28, 2016. Plaintiff opposed the motion, and the Court heard argument on September 8, 2016.

On September 14, 2016, the Court issued an order granting in part and denying in part Seagate's motion, and giving Plaintiffs the opportunity to replead certain causes of action.  Plaintiffs filed their FACC on October 18, 2016.

Plaintiffs served their First Request for Production of Documents on Seagate on September 1, 2016.  Seagate produced documents to Plaintiffs, which Co-Lead Counsel reviewed.  On July 27, 2016, Plaintiffs' counsel met with Seagate's counsel and reviewed copies of 2015 Form W-2s that were involved in the Data Incident.

### C.    Settlement Negotiations and Resolution

After Plaintiffs filed their FACC, the parties agreed to attempt to mediate a resolution to the dispute.  On December 13, 2016, the parties participated in a full-day, arms'-length mediation negotiation supervised by the Honorable Judge Carl. J. West (Retired). Both parties provided Judge West with a mediation statement.  The parties agreed to the Stipulation and Agreement of Settlement (the "Settlement Agreement"; attached as Exhibit A to the Declaration of David J. Stone ("Stone Decl."), filed herewith).

## III.   TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement are briefly summarized as follows:

### A.    Class Definition

The Settlement Employee Class is defined as "[a]ll persons who are or were employees of Seagate or its affiliates (collectively, "Seagate") and whose W-2 information was involved in the Data Incident."

The Settlement Third-Party Class is defined as "[a]ll individuals who, from February 29, 2016 through the date of final approval of the settlement were Qualifying Spouses or Qualifying Adult

Dependents of a Settlement Employee Class Member."

The Settlement Employee Class and Settlement Third-Party Class are collectively referred as the Settlement Class.  (Settlement Agreement ¶ 1.25.)

The Settlement Employee Class is the same scope as the "Employee Class" pleaded in the FACC.  The "Settlement Third-Party Class" differs from the "Third-Party Class" pleaded in the FACC only to the extent that it is limited to individuals who filed a joint 2015 federal tax return with an Employee Class Member or who were listed as an adult dependent on an Employee Class Member's 2015 federal tax return.  Co-Lead Counsel have no reason to believe that the scope of the Settlement Third-Party Class is more limited than the Third-Party Class pleaded in the FACC.

**B.    Settlement Consideration**

1.    Identity Theft Protection Services

The Settlement Agreement provides that any Employee Class member who does not timely opt-out of the Settlement Class and who previously accepted the Experian identity theft protection plan offered by Seagate after the Data Incident has the option to extend his or her identity theft protection plan, at Seagate's cost.  Any Employee Class member who does not timely opt-out of the Settlement Class and who did not accept the Experian identity theft protection plan previously offered by Seagate and any Third Party Class member shall have the option to request Experian's ProtectMyID identity theft protection plan for a two-year period, at Seagate's cost.  (Settlement Agreement ¶¶ 5.1.1-5.1.3.)

Co-Lead Counsel values the Identity Theft Protection component of the Settlement consideration at approximately $480 per Settlement Class Member, or $5.75 million for the entire class.  (Stone Decl. ¶ 6.)

2.    Reimbursement of Documented Economic Costs

Any Settlement Class member may submit one or more claims for reimbursement for documented economic costs related to the Data Incident if such claims are not reimbursable and have not been reimbursed by Experian or a third party.    Settlement Class members may obtain reimbursements up to an aggregate total of $3,500 per Settlement Class Member.  Settlement Class members must first submit their claim to Experian, have Experian deny their claim, and exhaust

Experian's claims process. (Settlement Agreement ¶ 5.2.)

Co-Lead Counsel estimates the Reimbursement component of the Settlement consideration to have a value up to $42 million to benefit the Settlement Class  (Stone Decl. ¶ 7.)

3.    <u>Non-Monetary Relief</u>

Seagate will implement and maintain the following data security practices:

    a.    An information security program containing policies, procedures, and technical controls as well as training and education for employees who handle PII;

    b.    Controls regarding employee requests for Forms W-2;

    c.    Additional training regarding the storage of Forms W-2 and other company records containing PII; and

    d.    Simulated phishing exercises designed to educate and train employees in various functions across Seagate where PII might be used. (Settlement Agreement ¶ 5.4.)

**C.    Release**

In exchange for the relief described above, Seagate and its related and affiliated entities (the "Released Parties" defined in the Settlement Agreement) will receive a full release of all claims arising out of or related to the Data Incident.  (Settlement Agreement ¶ 9.)

**D.    Notice and Settlement Administration**

The parties have agreed to the appointment of Dahl Administration, Inc. ("Dahl"), as Settlement Administrator.  Dahl will, subject to Court approval, provide notice to the class in the manner set forth below.  (Settlement Agreement ¶ 8.)  The costs of notice and settlement administration will be paid by Seagate, without reduction of any benefits to the Settlement Class members.

**E.    Service Awards**

In recognition of Plaintiffs' time and effort serving as class representatives, class counsel will petition the Court for service awards not to exceed $2,500 per class representative; Seagate agrees not to oppose this request.  (Settlement Agreement ¶ 10.)

**F.    Attorneys' Fees and Expenses**

Class counsel will petition the Court for an award of reasonable attorneys' fees in an amount not

to exceed $746,250 and reimbursement of actual expenses in an amount not to exceed $25,000.  Seagate agrees not to oppose this petition.  The requested fee award is less than 2% of Co-Lead Counsel's estimated value of the Settlement.

Any award of attorneys' fees and expenses will be paid by Seagate separate from and without reduction of the benefits to the Settlement Class members. (Settlement Agreement ¶10.)

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED.

The Court's first step in the process of granting preliminary approval of a settlement is to determine that the proposed settlement class is appropriate for certification.  Manual for Complex Litigation § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  To certify a class, the plaintiff must demonstrate that the proposed class and proposed class representative meet four requirements:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

In addition, a plaintiff seeking class certification must also meet at least one of the requirements of Fed. R. Civ. P. 23(b); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Where, as here, plaintiffs seek certification of a class under Rule 23(b)(3), they must demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *Kagan v Wachovia Sec., L.L.C.*, No. 09-5337, 2012 U.S. Dist. LEXIS 46372, at *12 (N.D. Cal. Apr. 2, 2012).  Here, the proposed Settlement Class meets each of the elements of certification under Rule 23(a) and satisfies the requirements of Rule 23(b)(3) for the purposes of settlement on a class-wide basis.

### A.    The Settlement Satisfies the Requirement for Numerosity

The first prerequisite to class certification under Rule 23 is that the "class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no specific minimum number of proposed class members required to satisfy the numerosity requirement, but generally a class of forty or more members is considered sufficient.  *Konstantinos Moshogiannis v. Sec. Consultants Group, Inc.*, No. 5-05971, 2012 U.S. Dist. LEXIS 16287, at *8 (N.D. Cal. Feb. 8, 2012) (holding that

numerosity is satisfied by a class of 254 members); *see also Hopkins v. Stryker Sales Corp.*, No. 5-02786, 2012 U.S. Dist. LEXIS 67101, at *14 n.9 (N.D. Cal. May 14, 2012) (finding numerosity satisfied by a class of 130); *Algee v. Nordstrom, Inc.*, No. 11-301, 2012 U.S. Dist. LEXIS 62232, at *6 (N.D. Cal. May 3, 2012) (finding a class of 60 sufficient).

Here, based on information provided by Seagate, there are 8,291 in the Employee Class. Plaintiffs estimate that there are approximately 4,000 individuals in the Third Party Class (Stone Decl., ¶9.) Accordingly, the proposed Settlement Class is so numerous that joinder of their claims is impracticable, and the numerosity requirement is easily satisfied for purposes of the proposed Settlement.

### B.      The Settlement Satisfies the Requirement of Commonality

Second, Rule 23 requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend upon a common contention," with "even a single common question" suffice. *Dukes*, 564 U.S. at 350, 359 (internal citation and quotation marks omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.") The common contention must be of such a nature that it is capable of class-wide resolution and that the "determination of its truth or falsity will resolve an issue." *Dukes*, 564 U.S. at 338. Moreover, the permissive standard of commonality provides that "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

Here, the Employee Class members allege identical claims under an implied contract theory. Settlement Class members allege identical statutory claims under the UCL, and they allege identical claims for negligence and declaratory relief. Plaintiffs allege that Seagate disclosed each Employee Class Member's 2015 Form W-2 data in a single incident, which allegedly led to the disclosure of each Third Party Class Member's PII  Plaintiffs allege that Seagate failed to take adequate steps and institute adequate measures to protect the PII of the Settlement Class members. These common allegations lead

to numerous common questions, such as:

      (a)     whether Seagate disclosed the Settlement Class members' PII;

      (b)     whether Seagate failed to protect the Settlement Class members' PII with industry-standard protocols and technologies;

      (c)     whether Seagate was on notice of the risk that it was a target of hacking or phishing scams; and

      (d)     whether Seagate promised the Employee Class members that it would protect their PII and any PII of Third Party Class members that they provided as a condition of their employment.

Answering these questions, regardless of the outcome, will resolve the allegations for the whole class "in one stroke," thereby effectuating "classwide resolution." *Dukes*, 564 U.S. at 338. In fact, courts have found that privacy litigation concerning inadequate security measures to protect consumers' PII is particularly suited for class certification because the class members' claims are all based on the same action (or inaction) of defendant. *See, e.g.*, *St. Joseph Health System Medical Info. Cases*, JCCP No. 4716, (Cal. Super. Ct., Orange County Dec. 5, 2014) (certifying a class in a Data Incident case); *Tabata v. Charleston Area Med. Ctr., Inc.*, 759 S.E.2d 459,466-67 (W. Va. 2014) (ordering certification in a Data Incident case and holding that the lower court abused its discretion in originally declining to certify).

Thus, the proposed Settlement Class meets the requirement of commonality.

## C.    The Settlement Satisfies the Requirement of Typicality

Rule 23 next requires that the class representative's claims be typical of those of the putative class they seek to represent. Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that "the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is measured under a permissive standard and does not require that the representative's claims be substantially identical, but only that they are "reasonably co-extensive with [the claims] of absent class members . . . ." *Hanlon*, 150 F.3d at 1020. Typicality is present when a defendant acts uniformly toward the class members, where that uniform conduct results in injury to the class members, and where the named plaintiffs suffer a similar

injury to that of the class members as a result. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

In the instant case, Plaintiffs have the same claims and interests as the proposed Settlement Class. Each Employee Class member alleges that he or she provided PII to Seagate as a condition of his or her employment. Employee Class members may have provided PII for their spouses or other dependents. Third Party Class members, such as Plaintiff Linda Castillo, allege that they had their PII provided to Seagate in connection with an Employee Class Member's employment. As such, the typicality requirement is satisfied for the purposes of this settlement. *See, e.g., Estrella v. Freedom Fin. Network, LLC*, No. C 09-03156, 2010 U.S. Dist. LEXIS 61236, at *33 (N.D. Cal. June 2, 2010) ("because plaintiffs' allegations are amenable to proving reliance on a classwide basis, and because [defendant] does not argue that any of its customers received disclosure statements that were materially different from those received by the named plaintiffs, [plaintiffs] are typical of the proposed class.").

### D.    The Settlement Satisfies the Requirement of Adequate Representation

Finally, Rule 23 requires that the proposed class representatives have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if representation is in fact adequate, the Court must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Further, where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the class representative will also ensure that interests of the class remain adequately protected. *See Dukes*, 564 U.S. at 349 n.5 (discussing how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have claims that are typical of those of the class.)

Here, Plaintiffs clearly meet the requirements to be named class representatives in this case. First, as discussed above, Plaintiffs share the same interests in securing relief for the claims in this case as every other member of the proposed Settlement Class, and there is no evidence of any conflict of interest. Next, Plaintiffs have demonstrated their continued willingness to vigorously prosecute this case

and have regularly consulted with their counsel, aided in the prosecution of the litigation, reviewed documents and the proposed settlement, provided documents in the course of this litigation, indicated their willingness to sit for depositions in this litigation, and indicated their desire to continue protecting the interests of the class through settlement or continued litigation. (Stone Decl., ¶¶15, 18.)  As such, the Plaintiffs should be appointed as representatives of the class.

Plaintiffs' counsel will similarly continue to adequately protect the interest of the proposed Settlement Class.  Proposed class counsel have regularly engaged in major complex litigation and have extensive experience in consumer privacy class action lawsuits, including cases of first impression related to data breaches and consumer privacy, and have been appointed class counsel in these efforts. *See, e.g.*, *Saint Joseph Health System Medical Information Cases*, JCCP No. 4716 (Cal. Sup. Ct. Oct. 2, 2015); *Harris v. comScore, Inc.*, No. 11-cv-5807 (Dkt. 353 at 2) (N.D. Ill. June 6, 2014); *Resnick v. Avmed*, No. 10-cv-24513 (Dkt. 82 at 3) (S.D. Fla. Oct. 25, 2013); *Standiford v. Palm*, No. 5:09-cv-05719-LHK (Dkt. 82 at 2) (N.D. Cal. Jan. 26, 2012). (*See also* Firm Resumes of Bragar Eagel & Squire, P.C.; Glancy Prongay & Murray LLP; Finkelstein, Blankenship, Frei-Pearson & Garber, LLP; and Keller Grover LLP; Exhibits B-E, respectively.)  Moreover, class counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency.  (Stone Decl., ¶16.)  As such, Plaintiffs and proposed class counsel will adequately represent the members of the Settlement Class and their interests.

**E.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

In addition to meeting the requirements of Rule 23(a), the proposed Settlement Class must also satisfy one of the three requirements of Rule 23(b) in order to be certified.  *Dukes*, 564 U.S. at 345. Rule 23(b)(3) provides that a class action can be maintained where:  (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008).  Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon*, 150

F.3d at 1022 (internal citation and quotation marks omitted).  Here, common questions of law and fact predominate for the purposes of the proposed settlement, and the proposed class-wide settlement is the best method of adjudication.

### 1.    Common Questions of Law and Fact Predominate

The predominance requirement focuses on whether the proposed Settlement Class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623.  Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ." *Hanlon*, 150 F.3d at 1022 (internal citation and quotation marks omitted). Here, as noted above, the common factual and legal questions presented are: (a) whether Seagate failed to protect the PII provided to it by the Employee Settlement Class members; (b) whether Seagate was on notice that it was a target of hacking or phishing scams; (c) whether Seagate took adequate steps to protect Settlement Class Members' PII; (d) whether Seagate promised the Employee Settlement Class members that it would not disclose any PII provided as a condition of employment; and (e) whether Seagate had a duty to Third Party Settlement Class members not to disclose any of their PII that had been provided to Seagate.

### 2.    This Class Action Is the Superior Method of Adjudication

Finally, certification of this settlement as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the class.  To meet the superiority requirement, a plaintiff must show that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76 (internal citation and quotation marks omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) (describing a class action as superior when it will reduce the costs inherent in litigation and "no realistic alternative exists" for the class members).  "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."  *Wolin*, 617 F.3d at 1175. Moreover, the class action mechanism is superior to individual actions in relatively small value cases with thousands of members as "Rule 23(b)(3) was designed for situations such as this . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

*Holloway v. Full Spectrum Lending*, No. 06-cv-5975, 2007 U.S. Dist. LEXIS 59934, at \*26 (C.D. Cal. June 26, 2007) (quoting *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)).  Finally, as in this action, when parties have already negotiated a compromise, courts need not focus on issues that could surface at trial because a finally approved settlement would extinguish the need for one.  *Amchem*, 521 U.S. at 620.

Here, Co-Lead Class Counsel estimates that the proposed Settlement Class is comprised of approximately 12,000 persons and, if each were to pursue their claims against Seagate individually, plaintiffs assert they would each need to provide nearly the same, if not identical, legal and factual arguments and evidence.  The result would be thousands of trials at enormous expense to the proposed class members, Seagate, and the courts.  Comparing the relatively small amount of damages each class member seeks to recover – *i.e.*, the costs of additional identity theft protection and economic damages allegedly caused by the Data Incident – with the costs of actually prosecuting those claims, makes clear that individual class members would have little incentive to pursue them on their own.  *See Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554,562 (C.D. Cal. 2012) (holding that a class action is superior to maintaining individual claims for a small amount of damages).  Where individual recoveries for Plaintiffs and the proposed class would be small and, but for the class action, would likely not even be pursued, the practical utility of the class action mechanism under federal law is apparent.  *See Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004).  Accordingly, this class settlement is the superior method for adjudicating the controversy between the parties, and, as all requirements of class certification under Rule 23 are met, the proposed Settlement Class should be certified.

### F.  Plaintiffs' Counsel Should be Appointed as Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1), and 23(g)(4).  In making this determination, the Court must consider the following attributes of counsel:  (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources

committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv).  As discussed above, proposed class counsel have extensive experience in prosecuting similar class actions and other complex litigation. (Stone Decl., ¶14.)  Specific to this case, proposed class counsel have diligently investigated this matter by dedicating substantial resources to the investigation of the claims at issue, which has included interviews of numerous Settlement Class members.  (Stone Decl., ¶15.)  Proposed class counsel have also taken the lead in developing the theories of this lawsuit, coordinating among counsel, briefing and arguing the motion to dismiss, and successfully negotiating the present settlement to the benefit of the Settlement Class.  (Stone Decl., ¶5.)  Accordingly, the Court should confirm the appointment of David J. Stone of Bragar Eagel & Squire, P.C.; Marc L. Godino and Mark S. Greenstone of Glancy Prongay & Murray LLP; Jeremiah Frei-Pearson of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP; and Eric A. Grover of Keller Grover LLP as class counsel for the Settlement Class.

## V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

After determining that the proposed Settlement Class should be certified, this Court must approve any settlement of this class action lawsuit.  The procedure for review of a proposed settlement is a well-established two-step process.  Fed. R. Civ. P. 23(e); *see also* Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.25 at 3839 (4th ed. 2002).  The first step is a preliminary, pre-notification hearing to ensure that the settlement is not "unacceptable at the outset." *Id.*  The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties.  Manual for Complex Litigation (Fourth) § 21.632 (2004).

Although the Ninth Circuit has expressed a strong judicial policy favoring the voluntary conciliation and settlement of complex class action litigation, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008), it has not specified a particular standard for granting preliminary settlement approval.  Nevertheless, courts in this district generally look to four factors in making this determination.  Specifically, preliminary approval should be given and notice of the settlement disseminated to class members where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant

preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation (Second) § 30.44 (1985)). *See also Boring v. Bed Bath & Beyond of Cal. LLC*, No. 1-cv-05259, 2013 U.S. Dist. LEXIS 165909, at *19 (N.D. Cal. Nov. 21, 2013) (quoting *Tableware*); *Cordy v. USS-Posco Indus.*, No. 12-cv-00553, 2014 U.S. Dist. LEXIS 2217, at *6 (N.D. Cal. Jan. 17, 2014) (same); *Ching v. Siemens Indus., Inc.*, No. C 11-4838, 2013 U.S. Dist. LEXIS 169279, at *18 (N.D. Cal. Nov. 26, 2013) (same).

The proposed Settlement here achieves the Action's objectives of obtaining meaningful identity theft protection and assurances that Seagate will reimburse Settlement class members for documented economic costs related to the Data Incident that are not covered under the Experian plan. The Settlement accordingly satisfies the four factors.

First, the proposed Settlement is the product of serious, informed, non-collusive negotiations. Settlement negotiations are generally found to be non-collusive when reached with the assistance of a third-party neutral, *see, e.g.*, *Boring*, 2013 U.S. Dist. LEXIS 165909, at *21, and are found to have been informed where the parties exchanged evidence and information prior to negotiations. *See, e.g.*, *Konstantinos Moshogiannis*, 2012 U.S. Dist. LEXIS 16287, at *14 (holding that settlement was fair, reasonable, and adequate where, inter alia, "the parties conducted a significant amount of informal discovery . . . ."). Here, the parties' respective assessment of the strengths and weaknesses of the case was informed by this Court's ruling on the motion to dismiss. Further, after the conclusion of the briefing on the pleadings, with the issues and theories set, the parties engaged in the informal exchange of information and decided to broach the issue of possible settlement. (Stone Decl., ¶15.) In fact, all settlement negotiations were conducted after the exchange of information and in the presence or with the assistance of Judge West at JAMS. As such, this first factor is satisfied. *See, e.g.*, *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4 ,2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement."); *Harris v. Vector Marketing Corp.*, No. C 08-5198, 2011 U.S. Dist. LEXIS 48878, at *25 (N.D. Cal. Apr .29, 2011)

1
2
3

("With the Court's prior rulings as guidance, the parties were in a position to assess the strengths and weaknesses of their arguments and evidence, and make an informed decision about the risks associated with proceeding . . . to trial.").

4
5
6
7
8
9
10

Second, there are no obvious deficiencies in the proposed settlement.  In contrast to many class action privacy settlements, the settlement here provides actual relief to the Settlement Class members in the form of two years of ProtectMyID identity theft protection and the opportunity to seek up to $3,500 in reimbursement for actual economic damages.  In addition, Settlement Class members whose PII is still held by Seagate will be protected by the security measures maintained by Seagate as a result of this Action.

11
12
13
14
15
16
17
18
19
20
21
22
23

It is not possible to determine the likely recovery for each Settlement Class Member because each Settlement Class Member's recovery under the Settlement depends on whether and to what extent such Settlement Class Member accepts the offer of identity theft protection services and/or incurred economic harm as a result of the Data Incident and complies with procedures for obtaining reimbursement of claims.  The cost for two years of the most equivalent level of credit monitoring protection offered by Experian, the IdentityWorks Premium plan, is approximately $480 per Settlement Class Member.   (Stone Decl., ¶12.)   In addition, each Settlement Class Member may seek reimbursement for any actual economic harm that was submitted and not covered under the Experian identity theft protection plan, up to $3,500.00 per Settlement Class Member.  Co-Lead Counsel believes that few, if any, Settlement Class Members will suffer economic losses above $3,500.00. (Stone Decl., ¶12.)   Co-Lead Counsel believes that the total consideration under the Settlement will provide the Settlement Class Members with almost all of the relief to which they would be entitled if they prevailed on their claims at trial. (Stone Decl., ¶12.)

24
25
26
27
28

The Settlement fairly allocates the Settlement consideration among the Settlement Class Members.  All Settlement Class Members are offered the same identity theft protection plan and each Settlement Class Member is entitled to seek reimbursement of actual documented economic costs up to $3,500.00.

Although Plaintiffs believe that the class would have been certified and that they would have ultimately prevailed, they also recognize that they will face risks at class certification, summary judgment, and trial. Seagate would no doubt present a vigorous defense, and there is no assurance that the class would prevail. Balancing the strength of the class's claims against the legal and factual obstacles remaining, Plaintiffs and class counsel concluded that accepting the relief afforded by the proposed settlement – which provides almost all of the relief the Settlement Class would be entitled to if they prevailed at trial – was in the best interest of the class. (Stone Decl., ¶20.)

For instance, in order to prevail at trial, Plaintiffs would have to demonstrate that: (1) Seagate made an implied promise to the Employee Class members to protect any PII provided as a condition of their employment; (2) the FACC pleaded causes of action for negligence and violations of the UCL; (3) Seagate was on notice that it was the target of hacking or phishing scams; (4) Seagate failed to take adequate measures to protect the Settlement Class members' PII; and (5) Seagate violated the UCL. In response to Plaintiffs' claims, Seagate asserted defenses based on the procedures it had in place to protect Settlement Class Members' PII and its compliance with any contractual obligations that Seagate may have had. In light of the monetary relief and data security protections under the Settlement (especially when weighed against the risk of continued litigation), the agreement here is certainly not "obviously deficient." *See, e.g., Tableware*, 484 F. Supp. 2d at 1080 ("Based on [the] risk and the anticipated expense and complexity of further litigation, the court cannot say that the proposed settlement is obviously deficient . . . ."); *Tijero v. Aaron Bros., Inc.*, No. C 10-01089, 2013 U.S. Dist. LEXIS 178511, at *324 (N.D. Cal. Dec. 19, 2013) ("[T]here are no obvious deficiencies. To the contrary, the settlement confers tangible monetary benefits to the class . . . ."); Ching, 2013 U.S. Dist. LEXIS 169279, at *19 (finding "no obvious deficiencies" in settlement providing monetary relief to class).

Third, the Settlement provides no preferential treatment to any individual member of the proposed settlement class. Under the Settlement, everyone in the Settlement Class is treated exactly the same: each Settlement Class Member seeking to obtain benefits under the Settlement must submit the same Election or Claim Reimbursement form, and each Settlement Class Member submitting a valid

1  Election Form will receive the same ProtectMyID identity theft protection plan and will have the

2  opportunity to seek up to $3,500 in reimbursement of any actual documented economic harm.  Although

3  Plaintiffs will seek from this Court modest incentive awards in recognition of the time and effort they

4  spent acting as Settlement Class representatives, such awards are common and in no way preclude

5  preliminary approval.  *See, e.g., Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 U.S. Dist.

6  LEXIS 166704, at *19-20 (N.D. Cal. Nov. 21, 2012); *Cordy*, 2014 WL 212587, at *7-9.

7       Finally, this Settlement falls well within the range of possible approval.  In evaluating this factor,

8  "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement

9  offer."  *Tableware*, 484 F. Supp. 2d at 1080.  Here, if the Settlement Class overcame the obstacles in this

10  Action and obtained a complete victory, Settlement Class Members would be entitled to essentially the

11  same relief they will get under the Settlement:  identity theft protection services, reimbursement of any

12  damages, and non-monetary relief in the form of maintaining security measures to protect PII.  *See*

13  *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012) (recognizing it is well-

14  established that in a UCL case recovery is limited to an injunction and restitution).  The significant

15  benefits available under the Settlement confirm that it is well within the range of possible approval.

16

17       Because the Settlement satisfies each of the four factors generally considered by courts in this

18  District to justify preliminary approval, this Court should – consistent with the Ninth Circuit's strong

19  judicial policy favoring settlement – preliminarily approve the Settlement Agreement.

20  **VI.    THE PROPOSED NOTICE PLAN**

21       To satisfy the requirements of both Rule 23 and Due Process, "[f]or any class certified under

22  Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the

23  circumstances, including individual notice to all members who can be identified through reasonable

24  effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

25  Rule 23(c)(2)(B) also provides that the substance of the "notice must clearly and concisely state in plain,

26  easily understood language," the nature of the action, the definition of the class to be certified, the class

27  claims and defenses at issue, as well as explain that class members may enter an appearance through

28  counsel if so desired, request to be excluded from the settlement class, and understand that the effect of a

class judgment shall be binding on all class members.  Fed. R. Civ. P. 23(c)(2)(B).  Notice is "adequate if it may be understood by the average class member."  Newberg § 11:53 at 167.  Rule 23(e)(1) similarly advises that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

Here the parties have agreed on a notice plan that satisfies these requirements (the "Notice Plan"), and Plaintiffs respectfully request that this Court approve it.  Upon entry of preliminary approval, the Settlement Administrator will send each Settlement Employee Class Member a summary notice by mail or an email that will include an electronic link to the settlement website, which includes Election and Reimbursement Forms.  This Notice clarifies the settlement class definitions, and confirms that Settlement Employee Class Members must notify their Qualifying Spouses and/or Adult Dependents regarding the benefits of the Settlement.  The Notice also includes contact information for proposed Settlement Class Counsel, the settlement website address, instructions regarding how to access the Court's docket via PACER, the date of the final approval hearing, and instructions on how to object or opt-out of the settlement.  (*See* Settlement Agreement Exs. A-B.)  Each of these summary notice emails will direct potential class members to the settlement website, which will serve as a more detailed form of notice and provide class members with the ability to file a claim form on-line.  (Settlement Agreement ¶8.)  The settlement website will contain, in plain language, all requirements of Rule 23(c)(2)(B) about the nature of the lawsuit and class members' rights as well as provide access to relevant court documents (in addition to how to access the entire docket on PACER), answers to frequently asked questions, and a toll-free number to reach proposed class counsel.  (*Id.* Exs. A-B.)  The format and language of each form of notice has been drafted so that it is in plain language, is easy to read, and will be readily understood by the proposed class.

Additionally, the Class Action Fairness Act requires that notice of a proposed settlement be sent to certain government officials.  28 U.S.C. § 1715.  Within ten days of the filing of this Motion, Seagate will serve the proper notice upon the required officials.  (Settlement Agreement ¶ 6.1.11.)  Accordingly, the proposed Notice Plan comports with Rule 23 and the requirements of Due Process, and should be approved by this Court.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order (1) certifying the proposed Settlement Class; (2) naming Plaintiffs as class representatives; (3) appointing David J. Stone of Bragar Eagel & Squire, P.C.; Marc L. Godino and Mark Greenstone of Glancy Prongay & Murray LLP; Jeremiah Frei-Pearson of Finkelstein, Blankenship, Frei-Pearson & Garber, LLP; and Eric A. Grover, of Keller Grover LLP as Settlement Class Counsel; (4) granting preliminary approval to the Settlement Agreement; (5) approving the proposed Notice Plan; (6) scheduling a final fairness hearing; and (7) granting such further relief the Court deems reasonable and just.

Dated: July 27, 2017

GLANCY PRONGAY & MURRAY LLP


By: *s/ Marc L. Godino*
Lionel Z. Glancy
Marc L. Godino
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email: mgodino@glancylaw.com

BRAGAR EAGEL & SQUIRE, P.C.
Jeffrey H. Squire
Lawrence P. Eagel
David J. Stone
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone: (212) 308-5858
Facsimile: (212) 486-0462
stone@bespc.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINKELSTEIN, BLANKINSHIP, FREI-
PEARSON & GARBER, LLP
Jeremiah Frei-Pearson (*Pro Hac Vice*)
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Telephone: (914) 908-6709
Jfrei-pearson@fbfglaw.com

KELLER GROVER LLP
Eric A. Grover
1965 Market Street
San Francisco, CA 91403
Telephone: (415) 543-1305
Facsimile: (415) 543-7861
eagrover@kellergrover.com

*Attorneys for Plaintiffs and the Class*

367775.1 SEAGATE

## <u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On July 27, 2017, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 27, 2017, at Los Angeles, California.


*s/ Marc L. Godino*
Marc L. Godino

## Mailing Information for a Case 3:16-cv-01958-RS Castillo et al v. Seagate Technology, LLC

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tiffany Cheung**
  tcheung@mofo.com,lucia-sario-5135@ecf.pacerpro.com,tiffany-cheung-0452@ecf.pacerpro.com,lsario@mofo.com

- **Lawrence Paul Eagel**
  eagel@bespc.com

- **Jeremiah Frei-Pearson**
  jfrei-pearson@fbfglaw.com

- **Todd S. Garber**
  tgarber@fbfglaw.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Marc Lawrence Godino**
  mgodino@glancylaw.com,info@glancylaw.com

- **Mark Samuel Greenstone**
  mgreenstone@glancylaw.com,info@glancylaw.com

- **Eric A. Grover**
  eagrover@kellergrover.com,eacevedo@kellergrover.com,Reception@kellergrover.com,sholloway@kellergrover.com,rjung@kellergrover.com,rspencer@kellergrover.com

- **Alexandra Eve Laks**
  alaks@mofo.com,gina-gerrish-5550@ecf.pacerpro.com,ggerrish@mofo.com,alexandra-laks-0787@ecf.pacerpro.com

- **David Frank McDowell**
  dmcdowell@mofo.com,docket-la@mofo.com,david-mcdowell-0950@ecf.pacerpro.com,etovar@mofo.com,elizabeth-tovar-4810@ecf.pacerpro.com

- **Jeffrey H. Squire**
  squire@bespc.com

- **David Jay Stone**
  stone@bespc.com,paralegals@bespc.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)