ERIC A. GROVER
KELLER GROVER LLP
1965 Market Street
San Francisco, CA 91403
Telephone: (415) 543-1305
Facsimile: (415) 543-7861
eagrover@kellergrover.com

*Attorneys for Plaintiffs*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| EVERETT CASTILLO, LINDA CASTILLO, NICHOLAS DATTOMA, FREDA LANG, WENDY TRAN, and STEVEN WILK, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>         v.<br><br>SEAGATE TECHNOLOGY LLC,<br><br>                              Defendant. | Case No. 3:16-cv-01958-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          March 8, 2018<br>Time:          1:30 p.m.<br>Judge:          Hon. Richard Seeborg<br>Courtroom:    3 |

{00290560  }

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to the Court's October 19, 2017 Order Granting Preliminary Approval of Class Action Settlement, on March 8, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Richard Seeborg in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 3, 17th Floor, San Francisco, California, Plaintiffs Everett Castillo, Linda Castillo, Nicholas Dattoma, Freda Lang, Wendy Tran, and Steven Wilk ("Plaintiffs") will, and hereby do, move the Court for entry of an Order finally certifying the Settlement Class and finally approving the Parties' Settlement Agreement.

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure 23(e) on the grounds that the Parties' Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

This Motion is based upon this Notice of Motion and Motion, the attendant Memorandum of Points and Authorities, the Declarations of Settlement Class Counsel David J. Stone, Marc L. Godino, Jeremiah Frei-Pearson, and Eric A. Grover, the Declaration of the Settlement Administrator, all pleadings and papers filed in this action, and such other matters as may be presented at or in connection with the hearing.

Dated: February 15, 2018

Respectfully submitted,

KELLER GROVER LLP

By: */s/ Eric A. Grover*
Eric A. Grover
1965 Market Street
San Francisco, CA 91403
Telephone: (415) 543-1305
Facsimile: (415) 543-7861
eagrover@kellergrover.com

{00290560 }

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GLANCY, PRONGAY
& MURRAY, LLP
Marc L. Godino (State Bar No. 182689)
Lionel Z. Glancy (State Bar No. 134180)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:     (310) 201-9150
Facsimile:      (310) 201-9160
mgodino@glancylaw.com

BRAGAR EAGEL & SQUIRE, P.C.
Jeffrey H. Squire
Lawrence P. Eagel
David J. Stone
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone: (212) 308-5858
Facsimile: (212) 486-0462
stone@bespc.com

FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
Jeremiah Frei-Pearson (Pro Hac Vice)
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Telephone: (914) 908-6709
Jfrei-pearson@fbfglaw.com

*Attorneys for Plaintiffs and the Class*

{00290560 }

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.      INTRODUCTION…………………………………………………1

II.     PROCEDURAL AND FACTUAL BACKGROUND……………………………...3

        A.      The Data Incident……………………………………………………...3

        B.      History Of The Litigation……………………………………………4

        C.      Overview Of The Settlement………………………………………...,,6

                1.      The Proposed Settlement Class……………………………6

                2.      Credit And Identity Theft Monitoring…………………………6

                3.      Reimbursement Of Documented Economic Costs………………………7

                4.      Changes To Seagate's Data Security Practices…………………………8

                5.      Class Notice And Settlement Administration…………………………9

                6.      Attorneys' Fees, Costs, And Incentive Awards………………...………10

                7.      Release……………………………………………….…………10

III.    ARGUMENT…………………………………………………….…10

        A.      The Settlement Class Satisfies Rule 23………………………………11

                1.      The Settlement Class Satisfies The Rule 23(a) Factors………………..11

                        a.      Numerosity ……………………………………...…11

                        b.      Commonality………………………………………12

                        c.      Typicality…………………………………………13

                        d.      Adequacy………………………………………14

2.    The Settlement Class Satisfies The Rule 23(b)(3) Factors……………...16

    a.    Predominance…………………………………………………...16

    b.    Superiority……………………………………………………20

B.    The Settlement Merits Final Approval…………………………..…………..…21

1.    The Strength of Plaintiffs' Case………………………………………...22

2.    The Risk, Expense, Complexity,
and Likely Duration Of Further Litigation…………………………......23

3.    The Risk Of Maintaining Class Action Status Through Trial…………..25

4.    The Amount Offered In Settlement………….……………………….…26

5.    The Extent Of Discovery Completed And The Stage Of Proceedings…27

6.    The Experience And Views Of Counsel……………………………….30

7.    The Presence Of A Government Participant…………………….…..…30

8.    The Reaction Of Class Members To The Settlement…………………...31

CONCLUSION…………………………………………………………………………32

# **TABLE OF AUTHORITIES**

1

2    **Cases**

3    *Abogados v. AT & T, Inc.*,
4         223 F.3d 932 (9th Cir. 2000).................................................................................18

5    *Amchem Prods., Inc. v. Windsor*,
         521 U.S. 591 (1997)...............................................................................16, 19
6

7    *Beck v. McDonald*,
         848 F.3d 262 (4th Cir. 2017)................................................................................23
8

9    *Bellinghausen v. Tractor Supply Co.*,
         306 F.R.D. 245 (N.D. Cal. 2015) .......................................................................28

10   *Blackie v. Barrack*,
11        524 F.2d 891 (9th Cir. 1975)................................................................................20

12   *Chamberlan v. Ford Motor Co.*,
         223 F.R.D. 524 (N.D. Cal. 2004) .......................................................................20
13

14   *Chun-Hoon v. McKee Foods Corp.*,
         716 F. Supp. 2d 848 (N.D. Cal. 2010)................................................................31

15   *Comcast Corp. v. Behrend*,
16        569 U.S. 27 (2013)................................................................................................17

17   *Cruz v. Sky Chefs, Inc.*,
18        No. 12-02705, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014)............................31

19   *Fraley v. Facebook, Inc.*,
         966 F. Supp. 2d 939 (N.D. Cal. 2013)...........................................................21, 22
20

21   *Hanlon v. Chrysler Corp.*,
         150 F.3d 1011 (9th Cir. 1988)........................................................................passim

22   *Hanlon v. Chrysler Corp.*,
23        150 F.3d 1027 ......................................................................................................21

24   *Hernandez v. Burger*,
         102 Cal. App. 3d 795, 162 Cal. Rptr. 564 (1980).............................................18
25

26   *In re Apple iPhone/iPod Warranty Litig.*,
         No. 10-01610, 2014 WL 12640497 (N.D. Cal. May 8, 2014) ..........11, 12, 13, 20
27

28   *In re Facebook, Inc., PPC Advertising Litig.*,
         282 F.R.D. 446 (N.D. Cal. 2012) ...................................................................11, 12

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ................................................................25

*In re Hyundai & Kia Fuel Econ. Litig.*,
   No. 15-56014, 2018 WL 505343 (9th Cir. Jan. 23, 2018) ...................... 16, 17, 19

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ...........................................................28

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007).................................................30

*In re Optical Disk Drive Prod. Antitrust Litig.*,
   No. 10-2143, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ...................26, 30

*In re Target Corp. Customer Data Security Breach Litig.*,
   No. 14-02522, 2017 WL 2178306 (D. Minn. May 17, 2017) ................26

*In re TJX Companies Retail Sec. Breach Litig.*,
   246 F.R.D. 389 (D. Mass. 2007) .............................................................25

*Isquierdo v. W.G. Hall, LLC*,
   No. 15-00335, 2017 WL 4390250 (N.D. Cal. Oct. 3, 2017) ................31

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008) ...........................................................13, 14

*Knight v. Red Door Saloons, Inc.*,
   No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................22

*Ladore v. Ecolab, Inc.*,
   No. 11-9386, 2013 WL 12246503 (C.D. Cal. Aug. 2, 2013)................22

*Larsen v. Trader Joe's Co.*,
   No. 11-05188, 2014 WL 3404531 (N.D. Cal. July 11, 2014)................31

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)................................................................26

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)................................................................17, 18

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (Cal. 2010)......................................................................18

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*,
   No. 09-05418, 2012 WL 10277179 (N.D. Cal. Jan. 6, 2012) ......................passim

*Moore v. Verizon Commc'n Inc.*,
    No. 09-1823, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ...............................................32

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................... 11, 22

*Parra v. Bashas, Inc.*,
    536 F.3d 975 (9th Cir. 2008) ..............................................................................................12

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...........................................................................................................17

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) .................................................................................................23

*Rodriguez v. Etreby Computer Co., Inc.*,
    No. 10-3522, 2011 WL 13127657 (C.D. Cal. June 27, 2011) .............................................28

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..............................................................................................11

*Smith v. Triad of Alabama, LLC*,
    2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) .............................................................. 13, 25

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................................ 10, 14

*Sterling v. Velsicol Chem.*,
    855 F.2d 1188 (6th Cir. 1988) ...........................................................................................19

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 10365 (2016) .....................................................................................................19

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ........................................................................................ 19, 20

*Vandervort v. Balboa Capital Corp.*,
    287 F.R.D. 554 (C.D. Cal. 2012) .......................................................................................21

*Vaquero v. Ashley*,
    *Furn.*, 824 F.3d 11505 (9th Cir. 2016) ..............................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................................passim

*West v. Circle K Stores, Inc.*,
    No. 04-0438, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ..............................................20

*Wolin v. Jaguar Land Rover N. Am. LLC*,
  617 F.3d 1168 (9th Cir. 2010) ............................................................. 20

*Zepeda v. PayPal, Inc.*,
  No. 10-1668, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ................................. 32

*Zinser v. Accufix Res. Institute, Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................. 20

**Statutes**

15 Okla. Stat. Ann. § 753 ...................................................................... 19

28 U.S.C. § 1715(b) ............................................................................ 31

California Business & Professions Code §§ 17200 ................................................. 4

Colo. Rev. Stat., § 6-1-105(1)(l) ............................................................... 19

Minn. Stat. § 325D.44 ........................................................................... 19

Or. Rev. Stat. § 646.607 ........................................................................ 19

Tex. Bus. & Com. Code Ann. § 17.46 .............................................................. 19

Va. Code. Ann. § 59.1-200 ....................................................................... 19

**Rules**

Federal Rule of Civil Procedure 23 ......................................................... passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

When Plaintiffs moved this Court for preliminary approval of the Settlement Agreement on July 27, 2017, Plaintiffs addressed all of the factors necessary to determine whether the Settlement Agreement is appropriate for preliminary approval and certification for settlement purposes.[1]  ECF No. 72.  Following a hearing on Plaintiffs' motion on September 21, 2017, ECF No. 75, this Court issued an Order granting Plaintiffs' motion for preliminary approval, granting preliminary certification of the settlement, and approving the settlement notice program.  ECF No. 76 (the "Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, Plaintiffs now move for final approval of the Settlement Agreement.

The Settlement Agreement requires Defendant Seagate Technology LLC ("Seagate") to offer Employees and Third Parties up to two years of Experian's ProtectMyID identity theft protection plan at no cost to the Settlement Class Members.  Seagate will also reimburse all Settlement Class Members for documented out-of-pocket costs as a result of the Data Incident that are not otherwise reimbursable through the ProtectMyID plan, *up to $3,500 per class member*.  As a result of the offered settlement benefits, participating Settlement Class Members will effectively recover more than the maximum amount they could recover if they fully prevailed at trial.  Plaintiffs estimate that the Experian ProtectMyID protection could provide approximately $5.75 million to the Settlement Class in total value.  Plaintiffs further estimate that Seagate's "backstop" protection could provide *more than $42 million* to protect a class estimated at 12,000 individuals.  Additionally, Settlement Class Members will directly benefit

---

[1] All of the settlement terms are set forth in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.") submitted with this motion.  The Court preliminarily approved the Settlement on October 19, 2017.  ECF No. 76.

from the non-monetary relief portion of the Settlement Agreement, which requires Seagate to implement and maintain numerous specific data security measures to protect personally identifiable information ("PII") in its possession (including that of Settlement Class Members) in the future.

In accordance with the Agreement, Dahl Administration, the Settlement Administrator, has mailed and emailed Summary Notice to 8.278 Settlement Class Members.  Declaration of Kelly Kratz Regarding Notice and Settlement Administration Activities Completed as of February 12, 2018 ("Dahl Decl.") ¶ 5.  As of February 12, 2018, 2,056 individuals have visited the Settlement website and 139 people have contacted the Settlement Administrator to learn of their rights under the Settlement.  *Id.* ¶ 8.  Although Class Members have until June 30, 2018 to file Election Forms, early results indicate widespread support for the Settlement, as 514 individuals have already submitted claims to participate in the Settlement.  *Id.* ¶ 15.  On the other hand, the deadline to object or opt-out of the Settlement was January 6, 2018; no one has objected to the Settlement and only sixty individuals requested to opt-out.  *Id.* ¶ 11.

By settling at this early stage in the proceedings, Class Members can timely obtain practical remedies that would otherwise not be available for years, if at all, thereby leaving them vulnerable to identity theft.  Indeed, through this Settlement, Class Members will receive precisely what Plaintiffs hoped to obtain at trial: extended credit monitoring services, reimbursements of out-of-pocket costs, and non-monetary relief improving Seagate's data-security practices.  The Experian ProtectMyID services will prevent and detect misuse of information taken in the data breach, while changes in data-security practices work to reduce the risk of future breaches.  Credit and identity monitoring services are needed most in the first few years after a data breach occurs, and security measures are most effective the sooner they can be

implemented.   Consequently,  any  delay  in  the  provision  of  monitoring  services  and strengthened data security practices risks further harming Class Members.

Accordingly, and for the reasons stated in Plaintiffs' preliminary approval motion and below, Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement Agreement.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   The Data Incident

On or around March 1, 2016, Seagate disclosed that it was the victim of a phishing attack resulting in the disclosure of 2015 Form W-2 data concerning individuals who worked for Seagate and certain corporate affiliates ("Employees") during the 2015 calendar year to an unauthorized third party (the "Data Incident").   *See* First Amended Consolidated Complaint, ECF No. 48 ("FACC") ¶¶ 25.

In notifying Employees of the Data Incident, Seagate offered its Employees two years of Experian's ProtectMyID credit and identity theft monitoring services, at no cost to the Employees. *Id.* ¶ 56.  Seagate did not offer such services to Employees' spouses or dependents. Frei-Pearson Decl. ¶ 25.

Plaintiffs  are  former  Seagate  Employees  (Freda  Lang,  Everett  Castillo,  Nicholas Dattoma, Wendy Tran, and Steven Wilk), and  one  spouse  of  a  former  Employee  (Linda Castillo). *Id.* ¶¶ 14-19.  Seagate notified each of the current and former Employees that their PII was disclosed in the Data Incident.  *Id.*  Each of the Plaintiffs alleges they suffered harm as a result of the Data Incident.  Plaintiffs' allegations are based on a simple premise: that the Data Incident was only possible because Seagate did not implement adequate data security measures to protect Class Members' PII.

Seagate continues to deny Plaintiffs' allegations and has asserted defenses to Plaintiffs' claims based on Seagate's implementation of reasonable procedures to protect Settlement Class Members' PII and Seagate's compliance with any contractual obligations that Seagate may have.

**B.**      **History Of The Litigation**

On April 14, 2016, Plaintiffs Everett Castillo, Linda Castillo, and Wendy Tran filed a Class Action Complaint (the "*Castillo* Action") against Seagate. *Castillo v. Seagate Technology, LLC*, 16-01958-MEJ, ECF No. 1 (N.D. Cal. Apr. 14, 2016).  The *Castillo* Action asserted claims for negligence, violations of California's Unfair Competition Law (California Business & Professions Code §§ 17200 *et seq.*), and declaratory judgment.  *Id.* ¶¶ 41-67.

On April 21, 2016, Plaintiff Nicholas Dattoma filed a Class Action Complaint (the "*Dattoma* Action") against Seagate.  *Dattoma v. Seagate Technology, LLC*, No. 16-02136-NC, ECF No. 1 (N.D. Cal. Apr. 21, 2016).  The *Dattoma* Action asserted claims for negligence, violations of California's Unfair Competition Law, and breach of implied contract.  *Id.* ¶¶ 65-98.

On June 15, 2016, the two actions were consolidated before this Court.  *Dattoma*, ECF No. 19 (June 15, 2016).  On June 28, 2016, Plaintiffs filed their Consolidated Class Action Complaint (the "Consolidated Complaint"). *Castillo v. Seagate Technology, LLC*, No.16-01958-RS, ECF No. 22 (June 28, 2016).  The Consolidated Complaint asserted claims against Seagate for negligence, violations of California's Unfair Competition Law, declaratory judgment, and breach of implied contract.  *Id.* ¶¶ 46-81.

On July 28, 2016, Seagate filed a motion to dismiss the Consolidated Complaint.  ECF No. 29.  On September 14, 2016, the Court issued its Order Granting in Part and Denying in

Part Seagate's motion, and granted Plaintiffs the opportunity to re-plead certain causes of action.  ECF No. 39.

Plaintiffs served their First Requests for Production on September 1, 2016.  Frei-Pearson Decl. ¶ 13.   Seagate produced responsive documents to Plaintiffs, which Class Counsel reviewed.  *Id.*  In addition, on July 27, 2016, Plaintiffs' counsel met with Seagate's counsel to examine sensitive documents that Defendant could not produce electronically.  *Id.*

On October 18, 2016, Plaintiffs filed the operative First Amended Consolidated Complaint.  ECF No. 48.  Around the same time, the Parties agreed to explore resolving the consolidated action through mediation.  Frei-Pearson Decl. ¶ 14.

On December 13, 2016, the Parties participated in a full-day, arms'-length mediation session before an independent mediator, the Honorable Judge Carl. J. West (Retired) of JAMS in Los Angeles.  *Id.* ¶ 15.  Both Parties provided Judge West with mediation statements in advance of the session.  *Id.*  Following the full day of mediation, the Parties continued to work with Judge West towards settlement, engaging in numerous teleconferences and other communications as they negotiated a settlement.  *Id.*

The negotiations leading to the Settlement were hard-fought.  *Id.* ¶ 16.  Given the extensive motion practice on Defendant's motion to dismiss, the formal and informal discovery conducted, and the mediation briefs submitted, the Parties were able to articulate the strengths and weaknesses of each other's position, ultimately reaching settlement after weighing the facts and applicable law, the risks of continued litigation, and with Judge West's assistance.  *Id.*  Negotiating the settlement terms was a long and sometimes highly contentious process, and ultimately required seven months to reach a final agreement.  *Id.*  The Parties executed the Settlement Agreement on July 20, 2017.  *Id.*

{00290560 }

Plaintiffs' motion for preliminary approval of the Settlement was filed on July 27, 2017. ECF No. 72.  The Court heard the motion on September 21, 2017, ECF No. 75, and granted preliminary approval on October 19, 2017.  ECF No. 76.

### C. Overview Of The Settlement

#### 1. The Proposed Settlement Class

The Settlement offers relief to two proposed classes: the Settlement Employee Class and the Settlement Third Party Class.  The Settlement Employee Class consists of all persons who are or were employees of Seagate or its affiliates and whose W-2 information was involved in the Data Incident.  Settlement Agreement ¶ 4.1.  The Settlement Third Party Class consists of all individuals who were Qualifying Spouses or Qualifying Adult Dependents of a Settlement Employee Class Member.  *Id.*  Plaintiffs estimate that the proposed classes covers approximately 12,000 individuals.

The Settlement Employee Class is the same scope as the "Employee Class" pleaded in the FACC.  *See* FACC ¶ 59.  The Settlement Third Party Class differs from the "Third-Party Class" pleaded in the FACC to the extent that it is limited to individuals who filed a joint 2015 federal tax return with an Employee Class Member or who were listed as an adult dependent on an Employee Class Member's 2015 federal tax return.  *See id.*  Class Counsel have no reason to believe that the scope of the Settlement Third Party Class is more limited than the Third-Party Class pleaded in the FACC.  Frei-Pearson Decl. ¶ 24.

#### 2. Credit And Identity Theft Monitoring

The Settlement Agreement provides for two additional years of Experian's ProtectMyID identity theft protection at Seagate's expense for all Class Members who do not submit a timely request for exclusion from the Settlement.  Settlement Agreement ¶ 5.1.  The Experian

ProtectMyID plan includes: daily bureau credit monitoring; identity theft resolution and ExtendCARE™, which provides fraud resolution support after expiration of the ProtectMyID membership; and $1 million in identity theft insurance, which covers designated identity theft related expenses including lost wages and unauthorized fund transfers. *Id.* Class Members who seek coverage under Experian's ProtectMyID plan must submit an Election Form on or before the June 30, 2018 Election Deadline.   *Id.*; *see also* Election Form, Ex. C to Settlement Agreement.

Although the particular product offered to Class Members is not available to the public, the most equivalent identity theft protection plan Experian offers to retail consumers is the IdentityWorks Premium plan, which costs $19.99 per month.   Frei-Pearson Decl. ¶ 26. Therefore, under the Settlement, each Settlement Class Member who signs up for credit monitoring will receive services worth approximately $479.76 in retail value ($19.99 a month for twenty-four months), at no cost.   *Id.*   The Experian ProtectMyID protection could provide the Settlement Class (estimated to include 12,000 individuals) with approximately $5.75 million in total value.   *Id.* ¶ 29.

### 3.   Reimbursement Of Documented Economic Costs

The Settlement also requires Seagate to compensate Class Members for documented economic costs arising out of the Data Incident.   Settlement Agreement ¶ 5.2.   Class Members can submit an unlimited number of claims for reimbursement, up to an aggregate total of $3,500 per Class Member.   *Id.*

Class Members may make a claim for reimbursement after exhausting Experian's claims process by submitting a Reimbursement Form and supporting materials to the Settlement

Administrator prior to the December 31, 2018 Reimbursement Deadline.  *Id.*; Reimbursement Form, Ex. D to Settlement Agreement.

The Settlement Administrator will review all timely claims and will have the authority to determine whether the claimant's supporting materials are sufficient to support a claim and the value of each claim.  Settlement Agreement ¶ 5.2.

Plaintiffs estimate that Seagate's "backstop" protection could offer potential coverage of more than $42 million to protect the Class.  Frei-Pearson Decl. ¶ 29.

### 4.     Changes To Seagate's Data Security Practices

Another benefit of the Settlement is that it requires Seagate to implement and maintain enhanced data security practices.  In particular, the Settlement requires that Seagate implement and maintain:

- An information security program containing policies, procedures, and technical controls as well as training and education for employees who handle personally identifiable information ("PII");

- Controls regarding employee requests for W-2 Forms;

- Additional training regarding the storage of W-2 forms and other company records containing PII; and

- Simulated phishing exercises designed to educate and train employees in various functions across Seagate where PII might be used.

Settlement Agreement ¶ 5.4.  The security procedures are directed at protecting Seagate employees' PII.  They will accordingly benefit both Class Members and individuals beyond the Class because any new Seagate employee will receive these same cybersecurity protections.

### 5.      Class Notice And Settlement Administration

Pursuant to the Settlement, following Your Honor's Preliminary Approval Order,
Seagate provided the Settlement Administrator with data files containing the identities, and last
known mailing addresses, and email addresses (if available) of the Employee Class Members.
Dahl Decl. ¶ 5.   The Settlement Administrator then ran the addresses through the National
Change of Address Database and sent Summary Notice to both identified US mail and email
addresses for Employee Class Members.   *Id.* ¶¶ 6-7.   The Settlement Administrator further
performed address traces for all Summary Notice mailings that were returned as undeliverable,
and promptly re-mailed Summary Notices to individuals for whom an updated address was
located through a trace.   *Id.* ¶ 9.   In addition, the Parties have agreed to email Employee Class
Members an additional round of notice as a reminder of the Settlement and the deadlines to
submit Election Forms and Reimbursement Forms.   Frei-Pearson Decl. ¶ 33.   As a part of the
agreement, Class Counsel have agreed to incur the costs of emailing the reminder.   *Id.*

The identity theft protection plan enrollment and reimbursement processes are designed
to be easy and accessible.   The Settlement Administrator has established a Settlement Website,
which contains the Settlement, Notice, the Preliminary Approval Order, Election Forms,
Reimbursement Forms, and other relevant documentation.     Dahl Decl. ¶ 8; Settlement
Agreement ¶ 7.2.4.   The Settlement Administrator has also established toll-free telephone line
for Class Members to call with Settlement-related inquiries.   *Id.* ¶ 7.2.3.   Class Members may
likewise submit inquiries to the Settlement Administrator by mail.   *Id.* ¶ 7.2.5.   Class Members
may submit Election Forms and Reimbursement Forms either on the Settlement Website or by
mail.   *Id.* ¶¶ 8.2.1, 8.2.3.   Class Members may submit Election Forms through June 30, 3018,
and may submit Reimbursement Forms through December 31, 2018.   *Id.* ¶¶ 8.2.2, 8.2.4.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6.    **Attorneys' Fees, Costs, And Incentive Awards**

Pursuant to the Court's Preliminary Approval Order, Plaintiffs separately petitioned the Court for awards of attorneys' fees, costs, and incentive awards.  The proposed Settlement Agreement permits Class Counsel to seek attorneys' fees and reimbursement of expenses of no more than $746,250 and $25,000, respectively.  Settlement Agreement, ¶ 10.  Class Counsel respectfully seek fees and expenses totaling $769,309.34.  Seagate has agreed not to oppose Plaintiffs' application.  *Id.* at ¶ 10.2.

7.    **Release**

In exchange for the benefits provided by the Settlement, Plaintiffs and all Settlement Class Members who did not timely and properly exclude themselves from the Settlement will release Seagate and its related and affiliated entities (the "Released Parties," as defined in the Settlement) from any claims arising out of the Data Incident, Seagate's maintenance of Class Members' PII, Seagate's information security policies or practices, and Seagate's provision of notice to the Settlement Class Members following the Data Incident.

III.   **ARGUMENT**

"Where the parties reach a proposed settlement prior to class certification, the court must review the agreement and approve 'both the propriety of the certification and the fairness of the settlement.'"  *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. 09-05418, 2012 WL 10277179, at *2 (N.D. Cal. Jan. 6, 2012) (Seeborg, J.) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).  The Ninth Circuit has long held that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisc*o, 688 F.2d 615, 625 (9th Cir. 1982)).

### A.    The Settlement Class Satisfies Rule 23.

This action meets all prerequisites of Federal Rules of Civil Procedure 23(a) and 23(b)(3) for class certification, including numerosity, commonality, typicality, ascertainability, predominance, and superiority.  This Court granted preliminary certification of the Settlement Class pursuant to Rule 23 in its Preliminary Approval Order.  Plaintiffs now respectfully move this Court to reaffirm its preliminary findings and issue an Order granting final approval of class certification.

### 1.    The Settlement Class Satisfies The Rule 23(a) Factors.

Pursuant to Rule 23(a), a class must demonstrate numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23.

### a.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  To satisfy this requirement, Plaintiffs "need not state the exact number of potential class members, nor is there a specific number that is required." *In re Apple iPhone/iPod Warranty Litig.*, No. 10-01610, 2014 WL 12640497, at *5 (N.D. Cal. May 8, 2014) (Seeborg, J.) (quoting *In re Facebook, Inc., PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012)).  "Courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members." *Id.*  Here, according to the information provided by Seagate, the Employee Class includes approximately 8,291 individuals.  Plaintiffs

estimate that the Third Party Class consists of approximately 4,000 individuals.  Therefore, the Settlement Class readily satisfies the numerosity requirement.

### b.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality may be demonstrated when the claims of all class members "depend on a common contention" and "even a single common question will do."  *In re Apple iPhone/iPod Warranty Litig.*, 2014 WL 12640497, at *5 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2556 (2011)).  In fact, "even where the 'circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.'"  *Id.* (quoting *Parra v. Bashas, Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008); *accord Milligan*, 2012 WL 10277179, at *2 ("Thus, for purposes of Rule 23(a)(2), a perfect identity of facts and law is not required.  Instead, relatively minimal commonality will do.").

Here, Plaintiffs allege that all of the Settlement Class Members' injuries arose out of a single event: the Data Incident.  The Employee Class Members allege identical claims under an implied contract theory.  Settlement Class Members allege identical claims under the Unfair Competition Law, and for negligence and declaratory relief.  Likewise, all of the Settlement Class Members' claims depend on numerous common contentions, such as: whether Seagate disclosed Plaintiffs' and Class Members' PII; whether Seagate failed to implement industry-standard cybersecurity practices, policies, protocols, and technologies to protect Plaintiffs' and Class Members' PII; whether Seagate failed to conduct reasonable data and cybersecurity trainings; whether Seagate had a common law duty to safeguard Plaintiffs' and Class Members' PII; whether a cyberattack was reasonably foreseeable; whether Seagate was on notice of the

risk that it was a target of hacking or phishing scams; whether Seagate promised the Employee Class Members that it would protect their PII and any PII of Third Party Class Members that they provided as a condition of their employment; and whether Seagate's conduct was negligent.

Regardless of which party is ultimately correct, these issues are common to each and every Settlement Class Member and are based on common evidence.   Answering these questions will resolve the allegations for the whole class "in one stroke," thereby effectuating "classwide resolution." *Dukes*, 564 U.S. at 338.   In fact, courts have found that privacy litigation concerning inadequate security measures to protect consumers' PII is particularly suited for class certification because the class members' claims are all based on defendant's same actions (or inactions). *See, e.g.*, *Smith v. Triad of Alabama, LLC*, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) (granting plaintiffs' contested motion for class certification in a data breach case); *St. Joseph Health System Medical Info. Cases*, JCCP No. 4716, (Cal. Super. Ct., Orange County Dec. 5, 2014) (granting plaintiffs' contested motion for class certification in a breach case).  Accordingly, commonality is satisfied.

### c.      Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Typicality is satisfied if the class representative's claims arise from the same course of conduct and are based on the same legal theory as the other class members' claims." *In re Apple iPhone/iPod Warranty Litig.*, 2014 WL 12640497, at *6 (citing *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008)).  Furthermore, "[t]ypicality does not require that the representative's claims be identical, but only that they are reasonably co-extensive with the claims of absent class

members." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988), *cert. denied*, 134 S. Ct. 8 (2013)) (internal quotation marks omitted).

Plaintiffs in this action have the same claims and interests as the Settlement Class. Plaintiffs Freda Lang, Everett Castillo, Nicholas Dattoma, Wendy Tran, and Steven Wilk's claims are typical of the Employee Class because they allege that, like each Employee Class Member, they entrusted Seagate with their PII as a condition of employment. Plaintiff Linda Castillo's claims are likewise typical of the Third Party Class because, Plaintiffs allege that she and the Third Party Class Members' PII was exposed as a result of the Data Incident. Plaintiffs allege that their PII was compromised as a result of the same Data Incident as Class Members, and they were subject to the same inadequate data security that Plaintiffs allege harmed the rest of the Class. Thus, typicality is satisfied.

### d.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representation meets this standard, we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (citations omitted). Further, where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the class representative will also ensure that interests of the class remain adequately protected. *See Dukes*, 564 U.S. at 349 n.5 (discussing how satisfying typicality usually also supports a finding of adequacy because an adequate representative will have claims that are typical of those of the class).

For the purposes of brevity, Plaintiffs incorporate the arguments made in their preceding Memorandum in support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Incentive Awards to Class Representatives, ECF No. 77, wherein Plaintiffs addressed their and Class Counsel's commitment to the Class, experience, and skill at length, and will briefly address adequacy here as well for the Court's convenience.

The Class Representatives' interests are identical to those of the Class and have no conflicts of interest with the Class.   Frei-Pearson Decl. ¶ 22.   Furthermore, the Class Representatives have participated actively in the case on behalf of themselves and the Settlement Class, taking time to speak with Class Counsel, search for and produce relevant evidence, review and approve the complaints for filing, keep abreast of the litigation for nearly two years, and remain actively involved in the settlement process.  Frei-Pearson Decl. ¶ 21.  They have also indicated their willingness to sit for depositions in this litigation, and indicated their desire to continue protecting the interests of the class through settlement or continued litigation.  *Id.*

Likewise, Class Counsel have demonstrated commitment to Class Members and will continue to protect their interests.   To date, Class Counsel have, *inter alia*: conducted extensive factual and legal research regarding potential claims and defenses, the dangers of identity theft, and available credit monitoring and identity theft protection plans; conferred with numerous putative class members; prepared the Amended Consolidated Class Action Complaint; opposed Seagate's motion to dismiss; prepared the First Amended Consolidated Class Action Complaint in light of Your Honor's Order on the motion to dismiss; drafted targeted discovery requests; engaged in discovery; prepared a mediation statement; attended mediation; engaged in months of settlement negotiations; and reached a mutually agreeable

and beneficial settlement. *Id.* ¶¶ 9-16. The active record and excellent Settlement likewise demonstrate that Class Counsel have prosecuted and will continue to prosecute this case vigorously, effectively, and in the Settlement Class' best interests. Accordingly, adequacy is satisfied.

## 2. The Settlement Class Satisfies The Rule 23(b)(3) Factors.

In addition to meeting the requirements of Rule 23(a), the Settlement Class must also satisfy one of the three requirements of Rule 23(b) in order to be certified. *Dukes*, 564 U.S. at 345. "Rule 23(b)(3) requires the court to find that common question of law or fact predominate over the questions of individual class members and that a class action is the superior method for fair and efficient adjudication." *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. 09-05418, 2012 WL 10277179, at *2 (N.D. Cal. Jan. 6, 2012) (Seeborg, J.) (citing Fed. R. Civ. P. 23(b)(3)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* at *4 (quoting *Hanlon*, 150 F.3d at 1011).

### a. Predominance

The predominance requirement focuses on whether the Settlement Class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). When assessing predominance, "a court has a 'duty to take a close look at whether common questions predominate over individual ones,' and ensure that individual questions do not 'overwhelm questions common to the class.'" *In re Hyundai & Kia Fuel Econ. Litig.*, No. 15-56014, 2018 WL 505343, at *3 (9th Cir. Jan. 23, 2018) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). The Court must first assess which laws apply and, if more

than one state's law applies, must also assess whether any variations in state law defeat predominance or whether, despite the fact that "some class members 'possess slightly differing remedies based on state statute or common law," there may still be "sufficient common issues to warrant a class action." *Id.* (quoting *Hanlon*, 150 F.3d at 1022-23).

Here, as pleaded in all complaints, *see Dattoma*, ECF No. 1, ¶¶ 65-98; *Castillo*, ECF No. 1, ¶¶ 41-67; *Castillo*, ECF No. 22, ¶¶ 46-81; FACC ¶¶ 67-102, and as the Court held in preliminarily certifying the settlement class, *see* Preliminary Approval Order ¶ 3, California law applies to the nationwide class. And, even if the Court were to find that California law did not apply, there are no relevant variations in state law. All Class Members are receiving the maximum that they could recover under any possible state law, so common issues predominate.

When determining whether California law applies to the nationwide class, the Court must "first determine whether the "forum state's substantive law may be constitutionally applied to the claims of a nationwide class." *In re Hyundai & Kia Fuel Econ. Litig.*, 2018 WL 505343, at *4 (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012)). Because Seagate maintains its principal place of business in California, is registered to do business in California, has sufficient minimum contacts with California, and the relevant conduct occurred in California, there is no dispute as to whether California's substantive law may be constitutionally applied to Seagate for the purposes of the nationwide class. *See* FACC ¶¶ 12, 20; *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (holding that the state "must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair.") (citation omitted).

California law will apply on a classwide basis if "the interests of other states are not found to outweigh California's interest in having its law applied." *Mazza*, 666 F.3d at 590 (citations omitted).   California law acknowledges that "a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders . . ." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97 (Cal. 2010) (citations omitted).

Indeed, "California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.'" *Mazza*, 666 F.3d at 593 (citing *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802, 162 Cal. Rptr. 564 (1980), *cited with approval by Abogados v. AT & T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000).   Here, all relevant conduct and harm is alleged to have occurred in California.   The Data Incident allegedly arose out of the conduct of a Seagate employee located in Seagate's California offices, Frei-Pearson Decl. at ¶ 8, and Seagate's policies that Plaintiffs allege caused the Data Incident also originated in California.   Therefore, California's strong interest in the application of its laws within its borders outweighs any other state's unasserted interests in applying their own laws to out-of-state conduct affecting their citizens.[2]

---

[2] Even if this Court were to disagree, there is no conflict between California law and the laws of any other state where Seagate employed Class Members (California, Colorado, Minnesota, Oklahoma, Oregon, Texas, and Virginia).

Plaintiffs assert two common law claims that blanket the class: negligence and implied breach of contract.  The basic elements of negligence law are virtually uniform across the states. *See* State Law Comparison Chart, Frei-Pearson Decl., Ex. 3 ("Chart").  The commonalities with respect to the important facts and legal issues relevant to Plaintiffs' negligence claims greatly outweigh any potentially individualized differences.  The evidence pertaining to Defendant's alleged duty and breach is entirely common.  This case does not raise the types of individualized proximate cause issues, for example, that can cause issues in certain highly distinguishable negligence actions. *See, e.g.*, *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1231 (9th Cir. 1996) (contrasting products liability with mass tort cases involving a "single catastrophic event"); *cf. Sterling v. Velsicol Chem.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("In

Under any choice of law analysis, common questions of fact and law predominate. Questions concerning Seagate's duties and guarantees to Employees and Third Parties with respect to safeguarding their PII, industry standards for cybersecurity, the acts and omissions that gave rise to the Data Incident, the Data Incident itself, applicable laws, Seagate's security practices, and violations of the applicable laws are amenable to generalized evidence, are

_____

mass tort accidents, the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next."). Likewise, as detailed in the Chart, the elements of implied breach of contract are indistinguishable among the applicable states. Breach of implied contract claims across the country focus on objective manifestations of intent and a meeting of the minds. *See* Chart. Thus, there are no material differences in state common law that would require individualized adjudication.

Plaintiffs also assert a claim under California's Unfair Competition Law and, if this Court were to hold that additional state laws apply, Class Members could potentially bring claims under the following consumer protection laws: Colorado's Consumer Protection Act, Colo. Rev. Stat., § 6-1-105(1)(l); Minnesota's Consumer Fraud Action, Min.. Stat. § 325F.69(1); Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44 *et seq.*; Oklahoma's Consumer Protection Act, 15 Okla. Stat. Ann. § 753; Oklahoma's Deceptive Trade Practices Act, 78 Okla. Ann. § 53; Oregon's Unfair Trade Practices Act, Or. Rev. Stat. § 646.607 *et seq.*; Texas' Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.46; and Virginia's Consumer Protection Act, Va. Code. Ann. § 59.1-200. However, importantly, those state laws allow for a recovery of damages, which is exactly what Plaintiffs and the Class achieved under this settlement. *See* Chart. Thus, unlike in *Hyundai-Kia,* where class members did not recover their actual damages and where the relevant state laws varied materially, *see In re Hyundai & Kia Fuel Econ. Litig.*, 2018 WL 505343, at *9, *12., here there are no relevant variations affecting the settlement. Furthermore, *Hyundai-Kia* did not alter the long-standing rule that any individualized damages do not defeat predominance. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *Vaquero v. Ashley Furn.*, 824 F.3d 1150, 1155 (9th Cir. 2016).

It is also notable that none of the additional states have applicable data breach laws that would confer additional benefits among citizen-Class Members. *See* Chart.

Given the common experience of every individual in this class with respect to the single Data Incident, the common evidence pertaining to data security and the breach, the common legal issues across the common law claims and statutory claims here at issue, the record before the Court demonstrates the proposed class is "sufficiently cohesive to warrant adjudication by representation" even if this Court were to decline to apply California law. *Amchem Prods.*, 521 U.S. at 623.

applicable to the Class as a whole, and predominate over any questions affecting individual Class Members.  Indeed, the *only* individual question in this action concerns damages and, as this Court and countless others have articulated, variations within the classes as far as damages are concerned are insufficient to derail class certification.  *Milligan*, 2012 WL 10277179, at *4 (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("[t]he amount of damages is invariably an individual question and does not defeat class action treatment"); *West v. Circle K Stores, Inc.*, No. 04-0438, 2006 WL 1652598, at *7-8 (E.D. Cal. June 13, 2006) ("individual issues regarding damages will not, by themselves, defeat certification under Rule 23(b)(3)")). Accordingly, predominance is satisfied.

### b.    Superiority

The superiority requirement exists to promote judicial economy and assure that a class action is the "most efficient and effective means of resolving the controversy."  *In re Apple iPhone/iPod Warranty Litig.*, 2014 WL 12640497, at *6 (quoting *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)).  A class action satisfies superiority when it "will reduce litigation costs and promotes greater efficiency" and "no realistic alternative exists" for managing the class members' claims.  *Id.* (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)); *cf. Zinser v. Accufix Res. Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004) (holding that, where individual recoveries for Plaintiffs and the proposed class would be small and, but for the class action, would likely not even be pursued, the practical utility of the class action mechanism under federal law is apparent);

*Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 562 (C.D. Cal. 2012) (holding that a class action is superior to maintaining individual claims for a small amount of damages).

Here, the Settlement Class is comprised of approximately 12,000 persons.  If each were to pursue their claims against Seagate individually, they would each need to provide nearly the same, if not identical, legal and factual arguments and evidence.  The result would be thousands of trials at enormous expense to Class Members, Seagate, and the courts.  Comparing the relatively small amount of damages each class member seeks to recover – *i.e.*, the costs of additional identity theft protection and economic damages allegedly caused by the Data Incident – with the costs of actually prosecuting those claims, makes clear that individual class members would have little incentive to pursue them on their own.  Accordingly, the Settlement is the superior method for adjudicating and resolving the controversy between the parties.

### B.    The Settlement Merits Final Approval.

When examining a class action settlement for final approval, the district court must also assess whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e). "Crucially, the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is not the same as asking the reviewing court if perfection has been achieved."  *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 941 (N.D. Cal. 2013) (Seeborg, J.), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) (citing *Hanlon*, 150 F.3d 1027).  According to the Ninth Circuit, district courts assessing whether a case is fair, reasonable, and adequate should consider the following factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Fraley*, 966 F. Supp. 2d at 941 (quoting *Hanlon*, 150 F.3d at 1026) (the "*Hanlon* factors"). All of the *Hanlon* factors militate in favor of final approval of the Settlement here.

Moreover, the Settlement was achieved following nearly two years of active, adversarial litigation, and seven months of rigorous negotiations, mediated by the Honorable Judge Carl. J. West (Retired) of JAMS, a renowned jurist, which militates in favor of approval. *See, e.g.*, *Ladore v. Ecolab, Inc.*, No. 11-9386, 2013 WL 12246503, at *5 (C.D. Cal. Aug. 2, 2013) (holding that Judge West's assistance in mediating a settlement militates in favor of approving the settlement). The pleadings were tested through motion practice and the Parties engaged in discovery. There is no indication that the negotiations were anything short of a good faith, arms'-length attempt by experienced and informed counsel to resolve the action. Consequently, the Settlement is entitled to a degree of deference. *See Milligan*, 2012 WL 10277179, at *5 ("'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited' to the extent necessary to determine that the agreement is fair, reasonable, and adequate." (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982))). "Although the burden of demonstrating the soundness of the settlement rests with the party advocating its approval, some courts presume a settlement to be fair so long as there has been sufficient discovery, and arms-length negotiations by experienced and capable counsel," *id.* (citing *Knight v. Red Door Saloons, Inc.*, No. 08-01520, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009)), as was the case here.

### 1.   The Strength of Plaintiffs' Case

Overall, Plaintiffs characterize their case against Seagate as strong. Plaintiffs' Consolidated Complaint already survived Seagate's first motion to dismiss, and Plaintiffs have since filed the Amended Consolidated Complaint, which aims to remedy the deficiencies in the

dismissed claims as elucidated by Your Honor's motion to dismiss Order. Consequently, Plaintiffs believe that all of the claims set forth in the Amended Consolidated Complaint could withstand a motion to dismiss and that they may be able to revive their claims on behalf of the Third Party Class. Plaintiffs are also optimistic that further discovery would reveal information that would strengthen their case.

Notwithstanding the above, Plaintiffs faced substantial risk. Notably, class certification and a finding of liability against Seagate are far from certain. For example, following the motion to dismiss stage, Seagate would presumably argue that it assembled robust data security practices and that its security has successfully prevented other cybersecurity attacks in the past.

Similarly, the extent of success is subject to a wide range of potential outcomes, which depend on, for instance, which claims survive, the scope of class certification, and whether the Court will require individualized proof of damages.

The dearth of data breach precedent for stages beyond motions to dismiss magnifies the inherent risks attendant to continued litigation such that it is ultimately difficult to measure the strength of Plaintiffs' case as well as Seagate's defenses, thereby militating in favor of settlement.

### 2. The Risk, Expense, Complexity, And Likely Duration Of Further Litigation

Due to the novelty and complexity of the data breach and privacy fields of law, this action implicates many unsettled questions and therefore presents extraordinary risk.

Even at the earliest stage in the proceedings, there was no guarantee that Plaintiffs' claims would survive a motion to dismiss. Indeed, many prior data breach cases were defeated on motions to dismiss. *See, e.g.*, *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017) (dismissed for lack of standing); *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) (same). Likewise,

while Plaintiffs' Consolidated Complaint survived Defendant's first motion to dismiss, Plaintiffs continued to face numerous hurdles. For instance, Plaintiffs faced a risk that, when deciding Seagate's inevitable motion to dismiss Plaintiffs' Amended Consolidated Complaint, the Court would again render a decision that foreclosed the proposed Third Party Class from recovery as a part of this action. Although Plaintiffs believe that the Court would have found in favor of Plaintiffs when assessing Defendant's arguments, Plaintiffs recognize the risk that thousands covered by the current Settlement Agreement would be left with no relief.

Following certification, which, as discussed below, entails its own challenges, Plaintiffs would continue to face a long road ahead. Seagate would likely continue to challenge Plaintiffs' ability to prove causation, damages, and the scope of Seagate's promise to protect PII (among other issues) at summary judgment and trial, or on subsequent appeal. Due to the fact that a classwide monetary judgment in a data breach action remains untested, there was also a risk that Plaintiffs would prevail on liability but recover only minor damages.

Further litigation would also be costly and time consuming. To date, Class Counsel have been litigating this matter for over twenty-one months, and have collectively devoted over 1,300 hours to litigating this case and spent over $23,059.34 in costs and other litigation expenses. Frei-Pearson Decl. ¶ 20. Another motion to dismiss, class certification, and summary judgment alone would likely take years to litigate and would entail extensive costs in terms of expert witnesses, at the very least.

Through the Settlement, Class Members can obtain timely and practical remedies that would otherwise not be available to them for years, if at all. Expeditious resolution is particularly valuable here because identity theft and credit monitoring services are most beneficial in the years immediately following the data breach, when the PII is most susceptible

to misuse.  Likewise, non-monetary relief related to Seagate's data security practices will reduce the risk of future data breaches.  Absent the Settlement, there is little Class Members could do to immediately protect themselves from the risks of identity theft besides purchase monitoring services themselves (which may never be reimbursed and they may not be able to afford), and nothing they could do to require Seagate to implement and/or maintain specific data security measures.  In other words, delaying resolution will only hurt class members.

Accordingly, the risk, expense, complexity, and likely duration of further litigation weigh in favor of approving the Settlement.

### 3.    The Risk Of Maintaining Class Action Status Through Trial.

Likewise, there is no guarantee that the Court would certify a class if the action proceeds through trial.  Indeed, when Class Counsel initiated their respective actions that culminated in the present action, to the best of Class Counsel's knowledge, there was *no* federal court precedent granting class certification to victims in a data breach case other than for settlement purposes.  *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach case); *In re TJX Companies Retail Sec. Breach Litig.*, 246 F.R.D. 389, 392 (D. Mass. 2007) (same).[3]  While Plaintiffs believe that this Court would have certified their claims, Defendant would have vigorously opposed certification, and there was a significant risk that the Court would deny class certification in whole or in part.  Also, even if the Court were to certify the classes, there is no guarantee the certification would survive through trial, as Defendant might have sought decertification or modification of the classes.

---

[3] To Plaintiffs' knowledge, one court has granted class certification in the data breach context since this action was initiated.  *See Smith v. Triad of Alabama, LLC*, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017).

### 4.     The Amount Offered In Settlement

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-2143, 2016 WL 7364803, at *5 (N.D. Cal. Dec. 19, 2016) (Seeborg, J.) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).  In light of the risks and uncertainties presented by data breach litigation, the Settlement – which could provide an estimated value of $47.75 million plus the added value of non-monetary relief designed to reduce the risk that the private information Class Members have entrusted to Seagate is compromised by future attacks – is exceptional.

By way of comparison, courts regularly grant final approval of settlements in data breach actions with far less beneficial terms, *i.e.*, providing for limited non-monetary relief, credit monitoring, or reimbursement for expenses related to identity theft.  Here, on the other hand, the Settlement secures substantial benefits for the Class, including comprehensive non-monetary terms related to Seagate's data security practices, two years of credit and identity theft monitoring (which includes $1 million for identity theft insurance), *and* additional funds available for reimbursements of out-of-pocket costs resulting from the Data Incident.  Indeed, Class Members will likely recover substantially more here than if Plaintiffs prevailed at trial.

For instance, in *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-02522, 2017 WL 2178306, at *9 (D. Minn. May 17, 2017), the court granted final approval settlement in a data breach affecting a class of more than forty million consumers whose credit and debit card information was stolen, and more than sixty million consumers whose PII was stolen. Notably, the *Target* settlement included limited reimbursements and non-monetary relief, and no credit monitoring.  *Id.* at 1-2.  Likewise, in *Curry v. AvMed, Inc.*, No. 10-24513, ECF No. 91

(S.D. Fla. Feb. 28, 2014), the court granted final approval of a settlement that consisted of a reversionary fund that permitted reimbursements of out-of-pocket expenses and non-monetary relief, and did not provide for any monitoring services. *Id.*, ECF No. 85-1 (S.D. Fla. Jan. 23, 2014) (settlement agreement). Unlike this case, neither *Target* nor *AvMed* required specific and comprehensive improvements to cybersecurity, nor did they offer comprehensive credit and identity theft monitoring.

The benefits offered in the Settlement are made more valuable by their timeliness. Should the Settlement receive final approval, it will go into effect at roughly the same time that the original monitoring services offered by Seagate to Employee Class Members is set to expire, thereby reducing lapses in coverage when Employees Class Members are most susceptible to fraud. The timeliness of the Settlement may also benefit the Third Party Class because data breach victims are generally most vulnerable to fraud in the years immediately following the breach. Thus, the sooner Settlement Class Members receive identity theft and credit monitoring protection services, the greater the value.

Consequently, the comprehensive Settlement, which provides remedies that are tailored to the nature of the Data Incident and the resultant risks to Class Members, demonstrates that Plaintiffs have capitalized on the strength of their case to obtain great value for the Class, and therefore militates in favor of final approval.

## 5. The Extent Of Discovery Completed And The Stage Of Proceedings

The purpose of this factor is to assess whether the parties entered into a settlement "in the absence of information illuminating the value of plaintiffs' claims." *Hanlon*, 150 F.3d at 1027; *accord In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015) ("This factor 'evaluates whether the parties have sufficient information to make an informed decision

about settlement.'") (citation omitted); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("[T]he court's focus is on whether 'the parties carefully investigated the claims before reaching a resolution.'") (citation omitted).  Where the parties proffered discovery requests, exchanged responsive documents, litigated a motion to dismiss, and engaged in mediation, as is the case here, courts find that counsel had sufficient information to make an informed decision, thereby weighing in favor of final approval.  *See In re Linkedin User Privacy Litig.*, 309 F.R.D. at 588 (holding that the factor supported final approval where parties exchanged documents, briefed motions to dismiss, and engaged in mediation); *Rodriguez v. Etreby Computer Co., Inc.*, No. 10-3522, 2011 WL 13127657, at *4 (C.D. Cal. June 27, 2011) (holding that the parties were capable of assessing the strengths and weaknesses of their positions where the parties exchanged information informally, propounded discovery requests, and litigated a motion to dismiss); *see also Milligan*, 2012 WL 10277179, at *6 (granting final approval of settlement where the parties conducted pre-litigation investigations, performed preliminary and confirmatory discovery, and engaged in ADR and mediation negotiations, but had not yet litigated the motion to dismiss).

While this action currently remains at the motion to dismiss stage of litigation, the stage is not indicative of the extent of investigation, litigation, and discovery that has ensued to date. Class Counsel began independent investigations of the Data Incident months before the filing of the initial complaint.  Frei-Pearson Decl. ¶ 10; Declaration of David J. Stone ("Stone Decl.") ¶¶ 4-6; Declaration of Marc L. Godino ("Godino Decl.") ¶¶ 4-6; Declaration of Eric A. Grover ("Grover Decl.") ¶ 3.  Class Counsel's pre-filing investigation included interviews of numerous putative class members.  Frei-Pearson Decl. ¶ 10; Stone Decl. ¶¶ 4-6; Godino Decl. ¶¶ 4-6; Grover Decl. ¶ 3.  In addition, Class Counsel researched publicly available materials and other

litigation relating to similar data breaches.  Frei-Pearson Decl. ¶ 10; Stone Decl. ¶ 6; Godino Decl. ¶ 6; Grover Decl. ¶ 3.  Then, as a result of filing two competing actions, Class Counsel worked together to consolidate the actions, which required further analysis and discussion of relevant facts and law.  Frei-Pearson Decl. ¶ 12; Stone Decl. ¶ 7; Godino Decl. ¶ 7; Grover Decl. ¶ 3.

Class Counsel also diligently pursued discovery, propounding comprehensive written discovery on Seagate and thoroughly examined Seagate's responsive document production.  Frei-Pearson Decl. ¶ 13; Stone Decl. ¶ 9; Godino Decl. ¶ 9; Grover Decl. ¶ 3.  The Parties also litigated Seagate's motion to dismiss the Consolidated Complaint.  After the Court's Order on the motion to dismiss, Class Counsel drafted an amended complaint, interviewing new witnesses as part of the process.  Frei-Pearson Decl. ¶ 14; Stone Decl. ¶ 8; Godino Decl. ¶ 8; Grover Decl. ¶ 3.

The settlement negotiations were also hard fought.  Prior to formal mediation, the Parties had direct settlement talks and then held several separate teleconferences with Judge West, who mediated the case.  Frei-Pearson Decl. ¶¶ 15-16.  The Parties also exchanged mediation statements before attending mediation.  *Id.*  The mediation statements included comprehensive analyses of the strengths and weaknesses of Plaintiffs' claims and Seagate's defenses.  *Id.*  On December 13, 2016, the Parties attended a full-day mediation before Judge West, for which they submitted detailed mediation briefs.  *Id.*  Thereafter, with Judge West's assistance, the Parties negotiated for approximately seven months before finalizing the Settlement.  *Id.*

Thus, "plaintiffs' counsel must be credited for resolving this litigation as expeditiously as possible, thereby minimizing their own fees and additional litigation expenses.  It is apparent

from the record, moreover, that plaintiffs' counsel has engaged in significant pre- and post-settlement investigation and discovery, ensuring that the proposed resolution is fair and reasonable in light of all the relevant circumstances." *Milligan*, 2012 WL 10277179, at *6. Thus, despite the relatively early stage in the proceedings, the extent of investigations, discovery, motion practice, and settlement discussions demonstrate Class Counsel's familiarity with the case and that they have sufficient information to make informed decisions.

### 6.       The Experience And Views Of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-2143, 2016 WL 7364803, at *5 (N.D. Cal. Dec. 19, 2016) (Seeborg, J.) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007)).  The Court appointed experienced and qualified counsel with substantial experience litigating complex class actions of all kinds, including data breach cases, to serve as Class Counsel.  *See* Order Granting Preliminary Approval of Class Action Settlement ¶ 6.  Class Counsel have represented Plaintiffs and Class Members for nearly two years, devoting over 1,300 hours to the case, and have no reservations in recommending the Settlement as a very good deal for the class.  Frei-Pearson Decl. ¶¶ 20, 30; Stone Decl. ¶ 3, Godino Decl. ¶ 3, Grover Decl. ¶ 2.  Thus, the experience and views of Class Counsel weigh in favor of final approval.

### 7.       The Presence Of A Government Participant

Pursuant to the Settlement and the Class Action Fairness Act, on August 7, 2017, the Settlement Administrator served notice of the Settlement upon the appropriate State official of each State in which a Class Member resides and the appropriate Federal official.  *See* Settlement Agreement § 6.1.11; 28 U.S.C. § 1715(b); Dahl Decl. ¶ 4.  However, no government official has

come forward with any objections, complaints, or concerns in response to notice of the

Settlement.  Thus, this factor also weighs in favor of final approval.

### 8.      The Reaction Of Class Members To The Settlement

With four and one-half months left to elect additional identity theft protection and more

than ten months left to make reimbursement claims, the Class' reaction to the Settlement has

been remarkably positive and supports final approval of the Settlement.  Not a single Class

Member objected, a fact that strongly counsels in favor of approving the settlement.  *See, e.g.*,

*Isquierdo v. W.G. Hall, LLC*, No. 15-00335, 2017 WL 4390250, at *5 (N.D. Cal. Oct. 3, 2017)

("The fact that there are no objections to the settlement further supports the reasonableness of

the settlement amount."); *Cruz v. Sky Chefs, Inc.*, No. 12-02705, 2014 WL 7247065, at *5 (N.D.

Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair,

adequate, and reasonable when few class members object to it."); *Larsen v. Trader Joe's Co.*,

No. 11-05188, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014) ("The absence of a large

number of objections to a proposed class action settlement raises a strong presumption that the

terms of a proposed class settlement action are favorable to the class members.").

The number of requests for exclusion is also extremely low – with only sixty

individuals, amounting to approximately 0.5% of the class, opting out of the Settlement.

*Isquierdo*, 2017 WL 4390250, at *5 (N.D. Cal. Oct. 3, 2017) (holding that an opt-out rate below

1% is an "extremely positive reaction from the class to the proposed settlement strongly favors

final approval"); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010)

(granting final approval of settlement where 4.86% of class members requested exclusion).

The Settlement is receiving a high level of interest from Class Members, with 2,056

unique individuals visiting the Settlement Website to date, and 139 individuals contacting the

{00290560 }

1    Settlement Administrator for additional information by either telephone or email.  Dahl Decl. ¶

2    8.

3         Class Members have until June 30, 2018 to submit their Election Forms and until

4    December 31, 2018 to submit Reimbursement Forms.  Despite the distant deadlines, the early

5    returns are promising.  To date, the Settlement Administrator has received 514 Election Forms

6    and twenty-six Reimbursement Forms.  *Id.* ¶ 15.  The number of Election Forms submitted

7    translates to a claims rate of 4.28%.  Based on its institutional experience administering notice

8    in similar cases, the Settlement Administrator expects that the number of claims will continue to

9    increase through the deadlines.  *Id.*  Furthermore, Class Counsel and the Settlement

10   Administrator anticipate that the reminder notice will trigger an uptick in the number of claims.

11   *Id.* ¶ 16; *see also* Frei-Pearson Decl. ¶ 33.  Notwithstanding the remote deadline and the

12   reminder notice, in light of the lack of objections and the low number of opt-outs, the claims

13   rate as it stands counsels in favor of final approval.  *See Zepeda v. PayPal, Inc.*, No. 10-1668,

14   2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017), *appeal dismissed*, No. 17-15780, 2017

15   WL 3138104 (9th Cir. July 11, 2017) (granting final approval where 2.8% of class members

16   submitted a claim); *Moore v. Verizon Commc'n Inc.,* No. 09-1823, 2013 WL 4610764, at *8

17   (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims

18   rate).

19   **IV.    <u>CONCLUSION</u>**

20        For the foregoing reasons, Plaintiffs respectfully request that the Court approve the

21   Settlement Agreement and enter judgment consistent with its terms.

22

23

24

25

26

27

28

Dated: February 15, 2018

Respectfully submitted,

KELLER GROVER LLP

By: */s/ Eric A. Grover*
Eric A. Grover
1965 Market Street
San Francisco, CA 91403
Telephone: (415) 543-1305
Facsimile: (415) 543-7861
eagrover@kellergrover.com

GLANCY, PRONGAY
& MURRAY, LLP
Marc L. Godino (State Bar No. 182689)
Lionel Z. Glancy (State Bar No. 134180)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:      (310) 201-9150
Facsimile:      (310) 201-9160
mgodino@glancylaw.com

BRAGAR EAGEL & SQUIRE, P.C.
Jeffrey H. Squire
Lawrence P. Eagel
David J. Stone
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone: (212) 308-5858
Facsimile: (212) 486-0462
stone@bespc.com

FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
Jeremiah Frei-Pearson (Pro Hac Vice)
445 Hamilton Avenue, Suite 605
White Plains, NY 10601
Telephone: (914) 908-6709
Jfrei-pearson@fbfglaw.com

*Attorneys for Plaintiffs and the Class*

{00290560 }

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL
Case No.  3:16-cv-01958-RS
33