1  FINKELSTEIN, BLANKINSHIP,
   FREI-PEARSON & GARBER, LLP
2  Jeremiah Frei-Pearson (*Pro Hac Vice*)
3  445 Hamilton Avenue, Suite 605
   White Plains, NY 10601
4  Telephone: (914) 908-6709
   Jfrei-pearson@fbfglaw.com
5  *Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT CASTILLO, LINDA CASTILLO, NICHOLAS DATTOMA, FREDA LANG, WENDY TRAN, and STEVEN WILK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br>SEAGATE TECHNOLOGY LLC,<br>Defendant. | Case No.: 3:16-cv-01958-RS<br><br>**DECLARATION OF JEREMIAH FREI-PEARSON IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      March 8, 2018<br>Time:     1:30 p.m.<br>Judge:    Hon. Richard Seeborg<br>Courtroom: 3 |

{00290533 }

I, Jeremiah Frei-Pearson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am an attorney duly admitted to practice law in the State of New York and am admitted to practice *pro hac vice* before this Court in connection with the above-captioned action (the "Action").

2. I am a partner in the law firm of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), and counsel for Plaintiff Everett Castillo, Linda Castillo, Nicholas Dattoma, Freda Lang, Wendy Tran, and Steven Wilk ("Plaintiffs"), and the putative class in this case.

3. I am the attorney principally responsible for the handling of this matter for my firm. I am personally familiar with the facts set forth in this declaration, and if called as a witness I could and would competently testify to the matters stated herein.

4. I respectfully submit this Declaration in Support of Plaintiffs' Motion for Final Approval of the Settlement Agreement.

5. Capitalized terms and phrases in this Declaration shall have the same meaning as set forth in the Settlement Agreement, attached as Exhibit 1.

**I.     FBFG's Experience & Quality**

6. My FBFG colleagues and I regularly engage in major complex litigation and have extensive experience in consumer privacy class action lawsuits, including cases of first impression related to data breaches and consumer privacy in California and throughout the country, and have been appointed class counsel numerous times.

7. FBFG has a proven track record of zealous and successful advocacy on behalf of its plaintiffs and the interests of class members. FBFG attorneys have successfully litigated complex class actions in federal and state courts all across the country, and have obtained successful results for clients against some of the world's largest corporations. A sampling of the FBFG's more

significant past and present cases can be found in the Firm's Resume, attached as Exhibit 2.

## II.     Background Of This Litigation And Settlement Negotiations

8.     This action arises out of a 2016 phishing attack on Seagate Technology, LLC ("Seagate" or "Defendant") that occurred on or around March 1, 2016 (the "Data Incident"). Based on information and belief, Class Counsel gathers that the Data Incident occurred in Seagate's California offices.

9.     On April 21, 2016, my firm filed a lawsuit arising out of the Data Incident on behalf of Nicholas Dattoma against Seagate.

10.     Before filing Mr. Dattoma's original action, FBFG exhaustively investigated his claims, including researching all applicable laws and determining relevant facts, researching publicly available materials and actions relating to similar data breaches, and interviewing numerous current and former Seagate employees. FBFG also conducted extensive research into the dangers of identity theft and available credit monitoring and identity theft protection plans.

11.     A similar action was commenced by Everett Castillo, Linda Castillo, and Wendy Tran in this Court on April 14, 2016, also alleging multiple claims arising out of the Data Incident.

12.     The two actions were consolidated on June 15, 2016. Following Class Counsel's extensive factual and legal research into the claims and potential defenses, Plaintiffs filed their Consolidated Class Action Complaint on June 28, 2016. On July 28, 2016, Defendant filed a motion to dismiss Plaintiffs' Consolidated Amended Complaint. FBFG reviewed and analyzed Defendant's motion, prepared opposing papers, and assisted counsel in preparing for the hearing.

13.     Class Counsel also diligently pursued discovery, propounding comprehensive written discovery on Seagate. Plaintiffs served their First Requests for Production on September 1, 2016. Seagate produced responsive documents to Plaintiffs, which Class Counsel carefully reviewed. In addition, on July 27, 2016, Plaintiffs' counsel met with Seagate's counsel to examine

sensitive documents that Defendant could not produce electronically.

14.     On September 14, 2016, the Court issued an order granting in part and denying in part Seagate's motion and granting Plaintiffs leave to amend several causes of action.  After reviewing Your Honor's Order, Class Counsel prepared an amended complaint, and interviewed new witnesses as part of the process.  Plaintiffs filed their First Amended Consolidated Complaint on October 18, 2016 ("FACC").  Around the same time, the Parties agreed to explore resolving the consolidated action through mediation.

15.     On December 13, 2016, the Parties participated in a full-day, arms'-length mediation session before an independent mediator, the Honorable Judge Carl. J. West (Retired) of JAMS in Los Angeles.  Both Parties provided Judge West with mediation statements in advance of the session.  Following the full day of mediation, the Parties continued to work with Judge West towards settlement, engaging in numerous teleconferences and other communications as they negotiated a settlement.

16.     The negotiations leading to the Settlement were hard-fought.  Given the extensive motion practice on Defendant's motion to dismiss, the formal and informal discovery conducted, and the mediation briefs submitted, the Parties were able to articulate the strengths and weaknesses of each other's position, ultimately reaching settlement after weighing the facts and applicable law, the risks of continued litigation, and Judge West's assistance.  Negotiating the settlement terms was a long and sometimes highly contentious process, and ultimately required seven months to reach a final agreement.  The Parties executed the Settlement Agreement on July 20, 2017.

17.     On July 27, 2017, Plaintiffs filed their Motion for Preliminary Approval of the Class Action Settlement and the Court heard the motion on September 21, 2017.

18.     The Court granted Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement on October 19, 2017.

19. Since the Court entered the Preliminary Approval Order, Class Counsel has been available and prepared to respond to any and all questions or concerns from the public, and I have spoken with Plaintiffs and Class members about the Settlement.

20. To date, Class Counsel have been litigating this matter for over twenty-one months, and have collectively devoted over 1,300 hours to litigating this case and spent over $23,059.34 in costs and other litigation expenses.

21. Likewise, the Class Representatives have participated actively in the case on behalf of themselves and the Settlement Class, taking time to speak with Class Counsel, search for and produce relevant evidence, review and approve the complaints for filing, keep abreast of the litigation for nearly two years, and remain actively involved in the settlement process. They have also indicated their willingness to sit for depositions in this litigation, and indicated their desire to continue protecting the interests of the class through settlement or continued litigation.

22. The Class Representatives' interests are identical to those of the Class and have no conflicts of interest with the Class.

**III.   The Settlement**

23. The Settlement offers relief to two proposed classes: the Settlement Employee Class and the Settlement Third Party Class. The Settlement Employee Class consists of all persons who are or were employees of Seagate or its affiliates and whose W-2 information was involved in the Data Incident. The Settlement Third Party Class consists of all individuals who were Qualifying Spouses or Qualifying Adult Dependents of a Settlement Employee Class Member. The proposed classes cover the approximately 12,000 individuals whose personal information was compromised by the Data Incident.

24. The Settlement Employee Class is the same scope as the "Employee Class" pleaded in the FACC. The Settlement Third Party Class differs from the "Third-Party Class" pleaded in the

FACC to the extent that it is limited to individuals who filed a joint 2015 federal tax return with an Employee Class Member or who were listed as an adult dependent on an Employee Class Member's 2015 federal tax return. *See id.* Class Counsel have no reason to believe that the scope of the Settlement Third Party Class is more limited than the Third-Party Class pleaded in the FACC.

25. It is noteworthy that, unlike Seagate's initial offer of Experian ProtectMyID services to solely Employees following the Data Incident, the Settlement extends its benefits to Third Party Class Members as well.

26. The credit monitoring services provide an extraordinary benefit for Class members. Every Settlement Class member who signs up for credit monitoring will receive two years of Experian's ProtectMyID, worth approximately $479.76 in retail value ($19.99 a month for twenty-four months), at no cost. My calculations for the value of the settlement are based on the retail cost of the most equivalent Experian identity theft protection plan. The most equivalent identity theft protection plan Experian offers to consumers is the IdentityWorks Premium plan, which costs $19.99 per month.

27. The Experian ProtectMyID plan includes: (i) daily bureau credit monitoring; (ii) identity theft resolution and ExtendCARE™, which provides fraud resolution support after expiration of the ProtectMyID membership; and (iii) $1 million in identity theft insurance, which covers certain costs, including lost wages and unauthorized electronic fund transfers.

28. Further, under the terms of the Settlement Agreement, each Settlement Class member is also entitled to up to $3,500 for reimbursement of out-of-pocket expenses incurred in connection with the Data Incident that are not otherwise reimbursable through Experian. Thus, any "gaps" in protection by the Experian plan should be filled by the backstop. Based on my experience handling similar actions, few Settlement Class members, if any, who take advantage of the Settlement will suffer any monetary harm from the Data Incident.

29. I estimate that the Experian ProtectMyID protection could provide approximately $5.75 million in total value to the Settlement Class, and that Seagate's "backstop" protection offers potential coverage of more than $42 million in total value to protect a class estimated at 12,000 individuals.

30. Based on my professional experience, my understanding of the strengths and weaknesses of Plaintiffs' claims, and taking into consideration the risks of continued litigation as compared to the relief granted by the Settlement, I believe the Settlement Agreement is fair, reasonable, and adequate, and represents a favorable result for the Settlement Class.

31. Defense counsel have significant class action litigation experience and demonstrated that experience by vigorously contesting Plaintiffs' allegations. Additionally, defense counsel devoted substantial resources to the defense.

32. Class Counsel's understanding of the cybersecurity and data privacy fields were critical throughout this litigation, particularly with respect to preparing the complaints, drafting targeted discovery requests concerning technical topics, understanding Defendant's responses, and opposing Defendant's motion to dismiss.

33. In addition to the Notice procedures set forth in the Settlement, the Parties have agreed to email the Employee Class Members an additional email notice as a reminder of the Settlement and the deadlines to submit Election Forms and Reimbursement Forms. As a part of the agreement, Class Counsel have agreed to incur the costs of the reminder email. Based on my experience, I anticipate that the reminder notice will enhance response rates.

**IV.  Exhibits**

34. Attached as Exhibit 1 is a true and correct copy of the Settlement Agreement and its attendant exhibits.

35. Attached as Exhibit 2 is a true and correct copy of FBFG's Firm Resume.


36. Attached as Exhibit 3 is a compilation of charts comparing relevant state laws in California, Colorado, Minnesota, Oklahoma, Oregon, Texas, and Virginia.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 15, 2018, at White Plains, New York.

                                        *s/ Jeremiah Frei-Pearson*
                                        Jeremiah Frei-Pearson